927 P.2d 420

Antonette LABAYOG, Plaintiff–Appellee,

v.

Dionicio LABAYOG, Defendant–Appellant,

Felicitas A. Labayog, Petitioner–Appellant.

The ESTATE OF Dionicio Mandac LABAYOG, Deceased.

Nos. 16096, 16310.

Intermediate Court of Appeals of Hawai'i.

Sept. 18, 1996.

Reconsideration Denied Oct. 4, 1996.

Certiorari Granted Oct. 21, 1996.

Certiorari Dismissed Dec. 10, 1996.

Wesley H. Ikeda (Reynaldo D. Graulty, with him on the briefs) (Graulty Ikeda & Ching, of counsel), Honolulu, for appellant in P. No. 91-0582 and FC-D No. 83-1132.

Paul T. Murakami (Duane M. Toyofuku *, on the brief), Honolulu, for co-personal representatives-appellees in P. No. 91-0582.

Joyce J. Uehara, Waipahu, for plaintiff-appellee in FC–D No. 84-1132.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

BURNS, Chief Judge.

This opinion involves two appeals, Appeal No. 16096, arising from a divorce case (FC–D No. 84-1132), and Appeal No. 16310, arising from a probate case (P. No. 91-0582). Ap-

peal Nos. 16096 and 16310 were consolidated into Appeal No. 16096 on August 29, 1995.

In both appeals, the appellant is the woman whom the defendant in the divorce case married four months after the entry of the divorce decree. The defendant in the divorce case died thirteen months after he married the appellant and is the decedent in the probate case. The ultimate result sought by the appellant is a court order that (1) voids that part of the family court's divorce decree that ordered the defendant to convey his parcel of improved residential real property to his five children of his first marriage, reserving a life interest; or (2) decides that where a divorce decree entered prior to decedent's death ordered the decedent to convey his parcel of real property, the rights of an omitted spouse and a pretermitted child take precedence over the conveyance of decedent's parcel of real property by the personal representatives of the decedent's estate pursuant to the family court's enforcement order.

Dionicio Labayog (Dionicio) was the defendant in the divorce case and is the decedent. Antonette Horan (Antonette), formerly known as Antonette Labayog, was Dionicio's first wife and is the plaintiff in the divorce case. Felicitas Labayog (Felicitas) is Dionicio's second wife and widow and the appellant in both appeals.

Appeal No. 16096 is an appeal by Felicitas of the family court's March 30, 1992 Order Denying Motion to Reconsider Order Granting Motion for Substitution of Parties and Motion to Intervene entered in Dionicio's and Antonette's divorce case.

Appeal No. 16310 is an appeal by Felicitas of the July 20, 1992 Order Denying Petition to Remove Co–Personal Representatives entered by the circuit court sitting in probate (Probate Court).[1] This order denied the following two alternative requests by Felicitas: first, to remove the Co–Personal Representatives (Co–PRs) for failing to list decedent's parcel of improved residential real property in the inventory of the decedent's estate and

---

* Resigned from the Hawai'i State Bar on March 16, 1995.

1. Hawai'i Revised Statutes (HRS) § 603–21.6 (1993) states, in relevant part, that "[t]he several circuit courts shall have power ... to do all ... things as provided in chapter 560 [Hawai'i's Uniform Probate Code]."

to appoint Felicitas in their place; or, second, to order the Co–PRs to include the residence in the inventory of Dionicio's estate.

## BACKGROUND

Felicitas is the widow of Dionicio, who died on September 6, 1990. In both appeals, Felicitas is acting for herself and as guardian of the property of Dionicio Labayog, Jr. (Junior), born on December 26, 1990. Junior is the minor son of Felicitas and Dionicio.

Prior to his marriage to Felicitas, Dionicio had been married to and subsequently divorced from Antonette. Pursuant to Dionicio's and Antonette's February 16, 1989 Pretrial Stipulation, the March 31, 1989 Divorce Decree (Divorce Decree) entered in FC–D No. 84–1132 awarded the land and improvements located at 1915 Lohilani Street, Honolulu, Hawai'i (Lohilani Property) to Dionicio, and the land and improvements located at 98–1608 'Apala Loop, 'Aiea, Hawai'i ('Apala Property) to Antonette, and ordered each of them to convey the land and improvements awarded to him or her, respectively, to the five children (Five Children) of their marriage, *per stirpes,* subject to a reservation of a life interest. The Five Children are Marilyn, Lawrence, Lyric, Jennifer, and Donna. Prior to Dionicio's death, neither party had complied with the conveyance order contained in the Divorce Decree. After Dionicio's death, Antonette complied with the Divorce Decree with respect to the 'Apala Property.

## FACTS

The relevant events occurred as follows:

| | |
|---|---|
| July 30, 1958 | Dionicio and Antonette marry. |
| | Dionicio and Antonette have the Five Children, born on the dates indicated: |
| April 26, 1959 | Marilyn |
| October 24, 1960 | Lawrence |
| January 19, 1962 | Lyric |
| January 1, 1967 | Jennifer |
| March 5, 1968 | Donna |
| October 1, 1984 | Dionicio and Antonette separate. |
| October 30, 1984 | Antonette files for divorce in FC–D No. 84–1132. |
| July 28, 1987 | Dionicio executes his Last Will and Testament (July 28, 1987 Will). It names Lyric, Jennifer, and Donna as Co–PRs and beneficiaries. It names Lawrence and Marilyn as conditional beneficiaries. |
| February 16, 1989 | Dionicio and Antonette file their Pretrial Stipulation settling the terms of their divorce. In the Pretrial Stipulation, they agreed Dionicio would be awarded the Lohilani Property, and that Antonette would be awarded the 'Apala Property. They also agreed that each of them would convey his or her awarded parcel to their Five Children, subject to a reservation of a life interest. |
| March 31, 1989 | The family court enters the Divorce Decree consistent with the terms of the Pretrial Stipulation. The Divorce Decree notes that none of the children are minors or full-time students at a post-high school educational institution. It specifies that "[e]ach party shall, at the request of the other, execute, acknowledge and deliver any documents which may be reasonably necessary to give full effect to this Decree. In the event that either of the parties refuses or is unable to comply with such request within thirty (30) days following the request, the parties agree that the Court, pursuant to rule 70(a), [Hawai'i] Family Court Rules,[2] may direct the Chief Clerk of the First Circuit Court to do all acts and sign all documents on behalf of the failing party necessary to give full force and effect to the provisions of this Decree." (Footnote added.) |
| July 28, 1989 | Dionicio marries Felicitas. |
| September 6, 1990 | Dionicio dies. |
| December 26, 1990 | Felicitas gives birth to Dionicio's sixth child, Junior. |
| September 4, 1991 | In P. No. 91–0582, Lyric, Jennifer, and Donna file a Petition for Probate of Will and Appointment of Personal Representative. They seek to be appointed as Co–PRs. |

2. Hawai'i Family Court Rules (HFCR) Rule 70(a) states as follows:

*Failure to comply.* If a decree directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified by the court, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court ex parte provided that the party entitled to performance files an affidavit that the disobedient party failed to comply with the order within the time specified by the court and the act when so done shall have like effect as if done by the disobedient party. If there is no time specified in the decree or order the party entitled to performance under this rule shall file appropriate pleadings against the disobedient party which shall be served in the manner provided for service in these rules.

| | |
|---|---|
| October 25, 1991 | The probate court orally grants the September 4, 1991 petition. |
| December 18, 1991 | In P. No. 91–0582, for herself and as Guardian of the Property of [Junior] pursuant to an order filed in G. No. 91–0078, Felicitas files a Petition to Remove [Co–PRs] for Cause and to appoint Felicitas as successor personal representative. Felicitas cites the fact that the Co–PRs do not intend to include the Lohilani Property in the inventory of Dionicio's estate. In the alternative, Felicitas asks the court to order the Co–PRs to include the Lohilani Property in the inventory of Dionicio's estate. |
| January 16, 1992 | The probate court enters an Order of Formal Probate of Will, Determination of Testacy and Heirs, and Appointment of [Co–PRs]. |
| January 16, 1992 | The probate court admits Dionicio's July 28, 1987 Will to probate and issues Letters Testamentary to Lyric, Jennifer, and Donna as Co–PRs. |
| January 31, 1992 | The probate court orally denies the December 18, 1991 Petition to Remove [Co–PRs] for Cause and the alternative request for an order requiring the Co–PRs to include the Lohilani Property in the inventory of Dionicio's estate. |
| February 19, 1992 | In FC–D No. 84–1132, Antonette files a Motion for Substitution of Parties seeking to substitute "the [Co–PRs] of the Estate of Dionicio Mandac Labayog in place of Defendant [Dionicio] in the above entitled case" so as to enable her "to proceed against Defendant by and through his [Co–PRs]." |
| February 25, 1992 | Although she is not a party in FC–D No. 84–1132, Felicitas files a Memorandum in Opposition to Motion for Substitution of Parties. |
| March 2, 1992 | The family court enters an Order Granting February 19, 1992 Motion for Substitution of Parties. |
| March 23, 1992 | In FC–D No. 84–1132, Felicitas files a Motion to Reconsider Order Granting Motion for Substitution of Parties and Motion to Intervene. |
| March 24, 1992 | In P. No. 91–0582, the Co–PRs file the Inventory. It reports no real property, a $3,000 car, and $3,000 worth of personal effects and furniture. |
| March 30, 1992 | The family court enters an Order Denying Motion to Reconsider Order Granting Motion for Substitution of Parties and Motion to Intervene. |
| April 29, 1992 | Felicitas files a Notice of Appeal in FC–D No. 84–1132, and thereby commences Appeal No. 16096. |
| May 8, 1992 | The family court files its Findings of Fact and Conclusions of Law in FC–D No. 84–1132. |
| July 20, 1992 | The probate court enters an Order Denying Petition to Remove [Co–PRs]. It is based on the finding |
| | "that there is probable jurisdiction by the Family Court of the First Circuit to enforce the terms of the Divorce Decree entered in … FC–D No. 84–1132." |
| July 22, 1992 | Felicitas files a Notice of Appeal in P. No. 91–0582, and thereby commences Appeal No. 16310. |

Dionicio's July 28, 1987 Will states in pertinent part as follows:

*ARTICLE ONE:* APPOINTMENT OF PERSONAL REPRESENTATIVE

(A) NOMINATION: I nominate LYRIC LABAYOG, DONNA LABAYOG and JENNIFER LABAYOG, as my Co–Personal Representatives hereinafter referred to as Personal Representative.

\* \* \* \* \* \*

*ARTICLE THREE:* DISPOSITION OF MY PROPERTY

(A) ENTIRE ESTATE: I give all my entire estate, being all real and personal property, of whatsoever kind or character and wheresoever situated, in which I may have any interest or to which I am now or may hereafter become entitled to my children, LYRIC LABAYOG, DONNA LABAYOG and JENNIFER LABAYOG, absolutely and in fee simple, in equal shares per stirpes…. I specifically disinherit my spouse ANTONETTE LABAYOG from my estate because I have already given substantial sums to my spouse. If my children LAWRENCE LABAYOG and MARILYN LABAYOG is [sic] provided for by my spouse ANTONETTE LABAYOG to the exclusion of my other children, then I specifically disinherit LAWRENCE and MARILYN LABAYOG. If either LAWRENCE and [sic] MARILYN LABAYOG is not so provided for, I declare that they shall share equally in my estate with the rest of my children.

Dionicio married Felicitas on July 28, 1989, two years after executing the Will. Junior was born on December 26, 1990, more than three years after Dionicio executed the Will. Therefore, Felicitas is an omitted spouse under Hawai'i Revised Statutes (HRS) § 560:2–301 (1993),[3] and Junior is a pretermitted

---

**3. HRS § 560:2–301 Omitted spouse.** (a) If a testator fails to provide by will for the testator's

surviving spouse who married the testator after the execution of the will, the omitted spouse shall

child under HRS § 560:2–302 (1993).[4] Both are entitled to a share of Dionicio's estate as if he had died intestate. Together, they have a seven-twelfth interest in Dionicio's estate.

The 1990 valuation of the Lohilani Property for real property tax purposes was $277,200 for the 10,889 square feet of land and $87,800 for the improvements, subject to a 1987 mortgage of $190,940.

## POINTS ON APPEAL

In Appeal No. 16096 from FC–D No. 84–1132, Felicitas contends. that the family court erred when it (1) substituted the Co–PRs instead of Felicitas as defendants in place of Dionicio; and (2) denied Felicitas' Motion to Intervene, notwithstanding the fact that she had established a *prima facie* case for intervention as required under Hawai'i Family Court Rules (HFCR) Rule 24(a)(2) (1982). Felicitas contends that both actions by the family court prevented her from filing an HFCR Rule 60(b)(4) (1982) motion seeking to void the Divorce Decree's award of Dionicio's parcel of improved residential real property to the five children on the ground that, in the divorce case, the family court "lack[ed] jurisdiction to award the property of the marriage to anyone except the husband or wife."

In Appeal No. 16310 from P. No. 91–0582, Felicitas contends that the probate court (1) erroneously interpreted HRS § 560:3–706(a) (1993) (pertaining to the personal representative's duty to prepare and file an inventory of property owned by the decedent at the time of the decedent's death) when it decided that the Lohilani Property need not be listed in the Inventory in order to effect proper administration of Dionicio's estate; and (2) erroneously relied on a void provision in the Divorce Decree when it "found that there is probable jurisdiction by the Family Court of the First Circuit to enforce the terms of the Divorce Decree[.]"

## DISCUSSION

### I. APPEAL NO. 16096 (DIVORCE CASE)

The family court's March 30, 1992 Order Denying Motion to Reconsider Order Granting Motion for Substitution of Parties and Motion to Intervene (March 30, 1992 Order) did two things. First, it denied the motion of Felicitas to intervene and thereby prevented her from filing an HFCR Rule 60(b)(4) motion contending that the Divorce Decree's award of property to the five children was void. Second, it denied Felicitas' motion for reconsideration of the order substituting the Co–PRs in place of Dionicio as defendant in the divorce case (Substitution Order).

Antonette contends that the family court properly denied Felicitas' motion to intervene because Felicitas (1) failed to comply with the procedural requirements for filing a motion to intervene, and (2) had no interest in the Lohilani Property. Antonette also contends that the order denying Felicitas'

---

receive the same share of the estate the omitted spouse would have received if the decedent left no will unless it appears from the will that the omission was intentional or the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence.

(b) In satisfying a share provided by this section, the devises made by the will abate as provided in section 560:3–902.

**4. HRS § 560:2–302 Pretermitted children.** (a) If a testator fails to provide in the testator's will for any of the testator's children born or adopted after the execution of the testator's will, the omitted child receives a share in the estate equal in value to that which the child would have received if the testator has died intestate unless:

(1) It appears from the will that the omission was intentional;

(2) When the will was executed the testator had one or more children and devised substantially all the testator's estate to the other parent of the omitted child; or

(3) The testator provided for the child by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence.

(b) If at the time of execution of the will the testator fails to provide in the testator's will for a living child solely because the testator believes the child to be dead, the child receives a share in the estate equal in value to that which the child would have received if the testator had died intestate.

(c) In satisfying a share provided by this section, the devises made by the will abate as provided in section 560:3–902.

motion for reconsideration was properly entered, but is not appealable. We will now discuss each of Antonette's contentions.

### A. *Denial of the Motion of Felicitas to Intervene*

#### 1. *Standard of Review*

HFCR Rule 24(a)(2) governs interventions of right and is similar to Hawai'i Rules of Civil Procedure (HRCP) Rule 24(a)(2) (1996). In interpreting HRCP Rule 24(a)(2), this court has concluded that an order denying an application for intervention by right under HRCP Rule 24(a)(2) is final and appealable, and is reviewed under the right/wrong standard of review. *Takayama v. Financial Sec. Ins. Co.*, 79 Hawai'i 98, 101, 898 P.2d 610, 613 (App.1995); *Kim v. H.V. Corp.*, 5 Haw.App. 298, 301, 688 P.2d 1158, 1160 (1984). We adopt this rule with regard to HFCR Rule 24(a)(2).

#### 2. *Procedural Validity of Motion to Intervene*

HFCR Rule 24(c) (1982) states that "[a] person desiring to intervene shall serve a motion to intervene upon all parties affected thereby. The motion shall state the ground therefor and shall be accompanied by a pleading setting forth the claim for which intervention is sought." In denying Felicitas' motion to intervene, the family court's Conclusion of Law No. 5 noted that the motion "was not accompanied by a pleading setting forth the claim for which intervention is sought." Felicitas argues that

[b]ecause a "pleading" under Hawaii [Hawai'i] Family Court [Rules] Rule 7(a) does not define a document by which [Felicitas] can herself bring the issue of the Family Court's jurisdiction vis-a-vis [sic] the Divorce Decree to resolution, [Felicitas] should not be faulted for failing to attach to her motion a document purporting to be a "pleading". Instead, a "pleading" as used in Hawaii [Hawai'i] Family Court [Rules] Rule 24(c) should be interpreted to be any and all documents which set out facts supporting a claim for relief. This task was accomplished with the affidavits, exhibits and memorandums [sic] submitted to the Family Court. [Felicitas] should

not be faulted for the failure to attach a "pleading" to her motion to intervene as a motion for relief under Hawaii [Hawai'i] Family Court [Rules] Rule 60(b)(4) is not defined as a "pleading" under Hawaii [Hawai'i] Family Court [Rules] Rule 7(a)(1).

(Footnote omitted.)

The language of HFCR Rule 24(c) is unequivocal. *See Amfac Fin. Corp. v. Shin*, 2 Haw.App. 428, 432, 633 P.2d 1125, 1128 (1981). Literally, only pleadings as defined under HFCR Rule 7(a)(1) (1982) satisfy HFCR Rule 24(c). HFCR Rule 7(a)(1) states, in relevant part, that "[a]n initial pleading shall be a complaint, petition, application, or written request, as required by statute." We conclude that, when moving to intervene so as to qualify to file an HFCR Rule 60(b)(4) motion, attaching a copy of the proposed Rule 60(b)(4) motion will satisfy HFCR Rule 24(c).

In this case, the motion to intervene clearly stated the reason why the intervention was sought. Under the circumstances, we consider the failure to comply with HFCR Rule 24(c) "a procedural blunder of no real significance." 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1914 (1986).

#### 3. *The Right of Felicitas to Intervene*

Antonette contends that since the March 31, 1989 Divorce Decree unequivocally ordered Dionicio to convey the Lohilani Property to the Five Children, reserving a life estate for himself, once Dionicio died, his estate had no claim to the property. Therefore, Felicitas, as Dionicio's surviving heir, had no interest in the Lohilani Property which would warrant her intervention into the divorce case. We disagree.

HFCR Rule 24(a) states in relevant part as follows:

(a) *Intervention of right.* Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property ... which is the subject of the action and he is so situated that the disposition of the action may as a practical

matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The situation is as follows: the Divorce Decree awarded the Lohilani Property to Dionicio, awarded the 'Apala Property to Antonette, and ordered Dionicio and Antonette to convey the remainder interests in their respective parcels to their Five Children, reserving life interests. After the Divorce Decree was entered, but before Dionicio and Antonette had complied with it, Dionicio died. After Dionicio died, Antonette complied with the Divorce Decree.

The Lohilani Property "[was] the subject of the [divorce] action[.]" Unless Felicitas was afforded the opportunity to stop the family court from ordering the Co–PRs to comply with the Divorce Decree, her claim (as an omitted spouse) and her son's claim (as a pretermitted child) to the Lohilani Property may have been impaired or impeded. Therefore, Felicitas had the right to intervene, and the family court was wrong when it denied Felicitas' motion to intervene. In light of other decisions in this opinion, however, we conclude that the family court's error was harmless.

### B. *Denial of Felicitas' Motion for Reconsideration of Substitution Order*

■ Antonette argues that we lack appellate jurisdiction to decide the appeal by Felicitas from the family court's order denying Felicitas' motion for reconsideration of the substitution order. Assuming we have appellate jurisdiction, Antonette contends that the family court properly denied the motion by Felicitas for reconsideration because (1) upon Dionicio's death, substitution of the Co–PRs was necessary to enable the family court to enforce the Divorce Decree, and (2) the Divorce Decree was valid and enforceable by the family court.

### 1. *Appellate Jurisdiction*

In her February 25, 1992 memorandum in opposition to the substitution, Felicitas contended that "[f]or the reason that the [Co–PRs] do not represent the real party in interest, the motion should be denied and instead, Felicitas Labayog and not the [Co–PRs] should be substituted as the *proper party* in place of [Dionicio]."

We agree with Antonette that the appeal by Felicitas from the order denying Felicitas' motion for reconsideration of the substitution order is premature. Consequently, we lack appellate jurisdiction to review the order.

HFCR Rule 25 (1982),[5] which sets forth the procedure for substitution of a deceased party, is similar to Federal Rules of Civil Procedure (FRCP) Rule 25. "An order allowing substitution under [FRCP] Rule 25 is interlocutory and not appealable of right. Nor will the courts use the extraordinary writs to review an order of this kind. The propriety of the substitution can be raised on appeal from a final judgment." 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1962 (1986) (footnotes omitted). Hawai'i follows the federal precedent. *Takayama v. Financial Sec. Ins. Co.*, 79 Hawai'i at 101, 898 P.2d at 613 (Hawai'i App.1995).

In her Reply Brief, Felicitas contends that [b]etter reasoned cases have determined that an order granting substitution is reviewable where the order "introduced a new cause of action." *Orkin Exterminating Co. v. O'Hanlon*, 243 N.C. 457, 91 S.E.2d 222 (1956). See, generally, Annot. Appealability of Order Granting or Denying Substitution of Parties, 16 ALR2d

---

5. HFCR Rule 25(a)(1) (1982) provides as follows:
   **Rule 25. Substitution of parties.**
   (a) *Death.*
   (1) If a party dies and the case is not thereby extinguished, the court may on motion order substitution of the proper parties where appropriate. The motion for substitution may be made by the successors or representatives of the deceased party or by any party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of process. Unless the motion for substitution is made not later than 180 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

1057.... [Felicitas] submits that a collateral attack under Rule 60(b)(4) presents a new cause of action.

Even if we were to accept this proposition and apply it to this situation, no new cause of action is involved. The order granting substitution merely facilitates the enforcement of an existing judicial decree. Therefore, we do not have appellate jurisdiction over the part of Appeal No. 16096 that appeals the denial of Felicitas' motion to reconsider the substitution of the Co–PRs in place of Dionicio.

## II. APPEAL NO. 16310 (PROBATE CASE)

### A. Denial of Petition to Remove Co–PRs

#### 1. Appellate Jurisdiction

The Co–PRs contend that the July 20, 1992 Order Denying Petition to Remove [Co–PRs] (July 20, 1992 Order Denying Petition) is not an appealable order because it is not the final order in the case and does not qualify for interlocutory appeal under any recognized exception. We conclude that a part of it is an interlocutory order that qualifies for appeal under a recognized exception.

As noted above, Felicitas' December 18, 1991 Petition to Remove [Co–PRs] for Cause sought the following alternative redress: first, to remove the Co–PRs and appoint Felicitas in their place; or, second, to order the Co–PRs to include the Lohilani Property in the inventory of Dionicio's estate. While the part of the court's order denying the first request of Felicitas is not appealable, we conclude that the part denying her second request is appealable.

#### 2. First Request: Replace Co–PRs with Felicitas

The statutory authorization for removing a personal representative is found in the Hawai'i Uniform Probate Code (HUPC), at HRS § 560:3–611 (1993), which states in relevant part:

§ 560:3–611 **Termination of appointment by removal; cause; procedure.** (a) A person interested in the estate may peti-

tion for removal of a personal representative for cause at any time....

(b) Cause for removal exists when removal would be in the best interests of the estate, or if it is shown that a personal representative or the person seeking the personal representative's appointment intentionally misrepresented material facts in the proceedings leading to the personal representative's appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of the personal representative's office, or has mismanaged the estate or failed to perform any duty pertaining to the office.

In her Petition to Remove [Co–PRs] for Cause, Felicitas stated in relevant part:

4. ... [T]he [Co–PRs] of the decedent's estate has [sic] or will be filing a false and untrue inventory.

5. Said [I]nventory fails to identify [the Property] as belonging to the decedent's estate.

6. When [Dionicio] died, he owned said residence[,] as is evidenced by that certain title report dated December 30, 1990 issued by Island Title Corporation[.]

Felicitas was an interested party who, based on her allegation that the Co–PRs were erroneously performing their duty by not including within the estate real property that should have been included, sought a court order to remove the Co–PRs and to appoint herself as personal representative. Therefore, her petition was authorized by HRS § 560:3–611 (1993).

*International Sav. & Loan v. Woods,* 69 Haw. 11, 731 P.2d 151 (1987), describes the final order rule of appealability (*International Savings* final order rule) as follows:

"The right of appeal ... exists only when given by some Constitutional or statutory provision." By virtue of Hawaii [Hawai'i] Revised Statutes (HRS) § 641–1(a) (Supp.1984),[6] "[a]ppeals [as of right are] allowed in civil matters from all final judgments, orders, or decrees of circuit ... courts ... to the supreme court or to the

---

6. HRS § 641–1(a) (1993) is identical to the version found in Supp.1984.

intermediate appellate court, except as otherwise provided by law." On its face the statute "does not allow an appeal 'from any decision which is tentative . . . or incomplete.'" Nor does it appear to permit appeals from orders that are only "steps towards final judgment in which they will merge."

Yet, an appealable judgment, order, or decree "is not necessarily the last decision of a case. What determines the finality of an order or decree [for purposes of appeal] is the nature and effect of the order or decree." "There are, for example, orders falling 'in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" Following the [United States] Supreme Court's lead, we have deemed these orders immediately appealable since they may not be effectively reviewable and rights could be lost, perhaps irretrievably, if review invariably had to await final judgment. . . .

*Id.* at 14–15, 731 P.2d at 153–54 (citations and footnotes omitted, footnote added).

■ Hawai'i precedent takes the view that efficiency requires finality before appealability. The policy of the *International Savings* final order rule disfavors piecemeal litigation. *Powers v. Ellis,* 55 Haw. 414, 417, 520 P.2d 431, 433 (1974). Exceptions to the *International Savings* final order rule are very limited and conservatively applied.

With regard to appeals in foreclosure cases, we noted in *Professional Sponsoring Fund v. Rao,* 5 Haw.App. 382, 694 P.2d 885 (1985), that

> for purposes of appeal foreclosure cases are bifurcated into two, not three or more, separately appealable parts. The first part is the decree of foreclosure. The second part includes the other orders, the last of which is usually the deficiency judgment.

*Id.* at 384, 694 P.2d at 887.

With regard to appeals in probate cases, we noted in *In re Chun,* 6 Haw.App. 306, 719 P.2d 1114 (1986), that

> like a judgment or decree of foreclosure, an order of formal probate of will or an order of intestacy entered in a formal testacy proceeding is an appealable final order. The order determines "the decedent's domicile at death, his heirs, his state of testacy, who shall serve as personal representative and whether or not informal proceedings may be maintained." Hawaii [Hawai'i] Revised Statutes (HRS) § 560:3–409 (1976). Thus, the order "finally determines the merits of the controversy [if any, concerning the decedent's domicile, heirs, etc.], and subsequent proceedings are simply incidents to its enforcement." *MDG Supply, Inc. v. Diversified Investments, Inc.,* 51 Haw. [375] at 380, 463 P.2d [525] at 528 [(1969)].

*Id.* at 309, 719 P.2d at 1117 (footnote omitted).

■ Consequently, for purposes of appeal, probate cases are bifurcated into two, not three or more, separately appealable parts. The first part is the order of formal probate of will or an order of intestacy entered in a formal testacy proceeding. The second part includes the other orders, the last of which is usually the order approving final accounts.

The July 20, 1992 Order Denying Petition is a part of the second part of the probate case, but it is not the last or final order of the second part. Therefore, it is an interlocutory order. The question is whether it is appealable. The Annotation, *Right of appeal from order on application for removal of personal representative, guardian, or trustee,* 37 A.L.R.2d 746 (1954), which was published years prior to the approval of the original Uniform Probate Code by the American Bar Association in 1969, addresses this issue in relevant part as follows:

### § 2. Summary and analysis.

\*    \*    \*    \*    \*    \*

Bearing in mind the danger of overgeneralization and over-simplification and the distinction between an order entered on application for removal of a fiduciary and an order entered on pleadings filed by the fiduciary challenging such application

..., it has generally been held or recognized that an order either denying or granting such an application is appealable.... In some cases such an order has been deemed to come within the statute authorizing appeals from interlocutory orders which affect a substantial right or in effect terminate the action or prevent a judgment, other cases reach the same result upon similar reasoning even in the absence of such a statute, while others deem such an order to come within the broad and general terms of the appeal statute. On the other hand, there are cases in which such an order has been held to be not appealable ..., generally on the ground that the order was interlocutory and not within the purview of a statute authorizing appeals from interlocutory orders in certain instances, or that it was not enumerated in the statute authorizing appeals, or that the court having original jurisdiction of removal of a fiduciary was vested with absolute discretion with respect thereto.

There are several jurisdictions which have developed niceties of their own ..., and others in which the appealability of an order granting or denying an application for removal of a fiduciary is controlled by special statutes.

37 A.L.R.2d at 755.

Hawai'i has no relevant statute. Therefore, the *International Savings* final order rule applies. Since HRCP Rule 54(b) (1996) does not apply to probate cases, *see* HRCP Rule 81(a)(1) (1996), the consequence of the *International Savings* final order rule is that the probate court's interlocutory order is not appealable unless it qualifies under the collateral order exception described in *Chuck v. St. Paul Fire & Marine Ins.*, 61 Haw. 552, 555, 606 P.2d 1320, 1323 (1980) (a grant or denial of a motion for disqualification of opposing counsel is not an appealable collateral order), or under the irreparable injury exception described in *Penn v. Transportation Lease Hawaii*, 2 Haw.App. 272, 274, 630 P.2d 646, 649 (1981) (an interlocutory permanent injunction requiring plaintiff to deliver to defendant certain automobiles which plaintiff was leasing from defendant is an appealable order).

The collateral order exception applies to an order that finally determines a claim of right separable from, and collateral to, rights asserted in the probate case, and that is too important to be denied review and too independent of the probate case to defer appellate consideration until after the conclusion of the probate case. *See*, 15A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3911 (1992).

The irreparable injury exception applies to an order that commands the immediate delivery of property to the appellant's adversary and the losing party would be subjected to irreparable injury if appellate review had to await the final outcome of the litigation. *See id.* at § 3910.

The opinion that is the subject of the A.L.R.2d annotation quoted above is *Collins v. Miller*, 198 F.2d 948 (D.C.Cir.1952). *Collins* concluded that an order denying a motion to remove personal representatives for cause is a collateral order. The decision was based on Title 20–603 of the District of Columbia Code which provided that

[i]f an administrator shall fail to return an account within the time limited by law or fixed by the rules of court, or within such further time as the probate court shall allow, his [or her] letters, on application of any person interested, may be revoked and administration granted at the discretion of the court[.]

*Id.* at 949. The court held:

If the order [denying the application for removal] was erroneous and is not appealable its effect upon the right of the appellant ... as a beneficiary of the estate will be final, because the administration of the estate will continue under and be completed by administrators not disposed to conduct the administration in a manner responsive to the provisions of the Code and the Rules of the District Court—the purpose of which is to secure prompt and proper administration in the interest of those entitled to distribution. The order was not tentative, informal or incomplete; on the contrary, it finally disposed of the claimed right of the appellant ... to re-

move [the administrators], and finally clothed the latter with authority to complete the administration. The order was not a mere step toward final judgment in which it would merge. On final distribution of the estate it will be too late effectively to review the order, and the rights conferred by the Code to prompt and proper administration of the estate will be lost, probably irreparably. We think ... the order ... is appealable because it was a final disposition of the claimed right, which was not an ingredient of the administration of the estate itself and did not require consideration with it.

*Id.* at 950–51.

*Collins* liberally applies a combination of aspects of the collateral order exception and the irreparable injury exception.

■ We conclude that the denial of a petition for a court order removing personal representatives does not qualify for the collateral order exception. It is not collateral to rights asserted in the probate case and too independent of the probate case to require that appellate consideration be deferred until after the final accounting and closing of the probate case.

■ We further conclude that a denial of a petition for a court order removing personal representatives does not qualify for the irreparable injury exception. First, the probate court has the authority under HRS § 560:3–607 (1993) [7] to order the Co–PRs to fulfill their duties. Second, pursuant to HRS §§ 560:3–703, –712, and –808 (1993),[8] a personal representative who acts improperly in carrying out his or her duties is liable to persons interested in the estate. Third,

> a writ of mandamus may be brought where irreparable and immediate harm would otherwise result. *Community Broadcasting of Boston, Inc. v. FCC*, 546 F.2d 1022 (D.C.Cir.1976). A writ of mandamus is, however, an extraordinary remedy which will ordinarily be invoked only in exceptional circumstances amounting to a judicial "usurpation of power". *Kerr v. United States [District Court for the Northern District of California]*, 426 U.S. 394, 402 [96 S.Ct. 2119, 2124, 48 L.Ed.2d 725] (1976).

*Wong v. Fong*, 60 Haw. 601, 604, 593 P.2d 386, 389 (1979).

### 3. Second Request: For Order Mandating Inclusion

#### (a) Appellate Jurisdiction

■ We turn now to the question of whether the probate court's order denying Felicitas' request for an order requiring the Co–PRs to include the Lohilani Property in the inventory of Dionicio's estate is appealable. We conclude that a probate court's decision that a parcel of real property is not a part of the decedent's estate is an appealable collateral order.

---

7. HRS § 560:3–607 (1993) states in relevant part as follows:

**Order restraining personal representative.** (a) On petition of any person who appears to have an interest in the estate, the court ... may ... make any ... order to secure proper performance of the personal representative's duty, if it appears to the court that the personal representative otherwise may take some action which would jeopardize unreasonably the interest of the petitioner or of some other interested person....

8. HRS §§ 560:3–703, –712, and –808 (1993) state in relevant part as follows:

**§ 560:3–703 General duties; relation and liability to persons interested in estate; standing to sue.** (a) A personal representative is a fiduciary who shall observe the standards of care applicable to trustees....

(b) A personal representative shall not be surcharged for acts of administration or distribution if the conduct in question was authorized at the time....

\* \* \* \* \* \*

**§ 560:3–712 Improper exercise of power; breach of fiduciary duty.** If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of the personal representative's fiduciary duty to the same extent as a trustee of an express trust....

\* \* \* \* \* \*

**§ 560:3–808 Individual liability of personal representative....**

\* \* \* \* \* \*

(d) Issues of liability as between the estate and the personal representative personally may be determined in a proceeding for accounting, surcharge or indemnification or other appropriate proceeding.

(b) *Merits of the Order Denying Inclusion*

■ We conclude that the probate court erred when it denied Felicitas' request for an order requiring the Co–PRs to include the Lohilani Property in the inventory of Dionicio's estate.

HRS § 560:3–706 (1993)[9] states in relevant part as follows:

> **Duty of personal representative; inventory; transfer from informal to supervised administration.** (a) Within thirty days after the personal representative's appointment, . . . a personal representative, . . . shall prepare and file with the registrar or the court, as appropriate, an inventory of property owned by the decedent at the time of the decedent's death, listing it with reasonable detail, and indicating as to each listed item, its fair market value as of the date of the decedent's death, if known with reasonable accuracy, and the type and amount of any encumbrance that may exist with reference to any item. The personal representative shall send a copy of the inventory to interested persons who request it.

The Lohilani Property was owned by Dionicio when he died. However, the Divorce Decree required Dionicio to convey the Lohilani Property to his Five Children, subject to a reservation of a life interest. The Lohilani Property is a part of Dionicio's estate until it is conveyed by the Co–PRs to the Five Children pursuant to the Divorce Decree. Had Dionicio complied with the Divorce Decree prior to his death, the Lohilani Property would not have entered his estate. Since HRS § 560:3–706(a) requires the Co–PRs to list, as part of the estate, "the type and amount of any encumbrance that may exist with reference to any item[,]" we conclude that the Co–PRs are required to list the Lohilani Property and the related obligation imposed upon Dionicio and Dionicio's estate by the Divorce Decree.

### B. The Three Dispositive Questions of Law

We now discuss and decide the three questions of law that are dispositive of the merits of the dispute between Felicitas and Antonette and the Five Children.

### 1. Validity of the Divorce Decree's Order and Enforceability by a Court that has Jurisdiction

■ Felicitas claims to have an interest in the Lohilani Property because "[t]he part of the Divorce Decree requiring [Dionicio] to convey a remainder interest to his children is void[.]" She contends that "the legislature did not confer the Family Court with the power to compel a husband to make a gift to the adult children of the marriage. Such an attempted exercise of power is void and the void portion of the Divorce Decree should have been recognized by the probate court." We disagree with Felicitas.

In its Conclusion of Law No. 6, the family court decided that "[t]he Divorce Decree herein is enforceable." In other words, the family court decided the opposite of the position Felicitas would have asserted if she had been allowed to intervene in the divorce case. The question of whether the family court had the jurisdictional power/authority in the divorce case to order Antonette and Dionicio to convey the remainder interests in their respective residential properties to their children is a major question in this litigation. Moreover, it is a question of law and it has been briefed and argued. Therefore, we will answer it, and our answer is "yes."

In the divorce case, the Pretrial Stipulation filed on February 16, 1989 was signed by Dionicio, Antonette, and their respective attorneys. The Pretrial Stipulation states in relevant part as follows:

II.  *UNDISPUTED ISSUES*

\*        \*        \*        \*        \*        \*

D. *Real Property.* The parties are in agreement about the division of the properties in the following manner:

1. *Hawaii [Hawai'i] Property.* Husband shall be awarded the marital real property and improvements located at 1915 Lohilani Street, Honolulu, Hawaii [Hawai'i] 96819, title to which has already

---

9. Act 288 (1996), which takes effect on January 1, 1997, amends HRS § 560:3–706 (1993).

However, the amendment is not relevant to this appeal.

been conveyed to him. Wife shall be awarded the real property and improvements located at 98–1608 Apala ['Apala] Loop, Aiea ['Aiea], Hawaii [Hawai'i] 96701, title to which is now vested solely in her name. Each party shall convey the party's real property and any improvements thereon, equally to each of their children now living, *per stirpes,* subject only to each party's reservations of a life estate in each of the respective properties awarded to each party.

The Divorce Decree was approved as to form and content by Dionicio and Antonette, approved as to form by their respective attorneys, signed by the family court judge, and filed on March 31, 1989. Regarding the real property, it states:

4. Other matters covered by the decree are as follows:

    \*      \*      \*      \*      \*      \*

c. *Real Property:*

(i) Husband shall be awarded the marital real property and improvements located at 1915 Lohilani Street, Honolulu, Hawaii [Hawai'i] 96819, title to which has already been conveyed to him. Wife shall be awarded the real property and improvements located at 98–1608 Apala ['Apala] Loop, Aiea ['Aiea], Hawaii [Hawai'i] 96701, title to which is now vested solely in her name. Each party shall convey the party's real property and any improvements thereon, equally to each of their children now living, *per stirpes,* subject only to each party's reservations of a life estate in each of the respective properties awarded to each party.

With respect to marriages and divorces, three relevant agreements between the marital partners are possible: (1) premarital or antenuptial agreements in contemplation of marriage (premarital agreements); (2) during-the-marriage agreements not in contemplation of divorce (marital agreements); and (3) agreements in contemplation of divorce (divorce agreements).

Felicitas contends that the part of the Divorce Decree that ordered the parties to convey a remainder interest in their respective real properties to the children of their marriage is void. The question of law (Question of Law) is as follows: In a divorce case, where the parties enter into a Pretrial Stipulation agreeing to award each party a separate parcel of improved residential real property and requiring each party to gift his or her parcel of real property to their living children, *per stirpes,* subject to a reservation of a life estate, does the family court have the jurisdictional power/authority to enforce that Pretrial Stipulation in its divorce decree?

This Question of Law deals with the limits of the family court's jurisdictional power/authority rather than the limits of the family court's equitable discretion within the limits of its jurisdictional power/authority. The act of a court in excess of its jurisdictional power/authority is void no matter how compelling the equities supporting the act. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1350 (1990).

█ The answer to the Question of Law is "yes." [10] In divorce cases where the conveyances are required by a valid and enforceable premarital agreement, marital agree-

---

10. In other jurisdictions, statutes have been held not to authorize the court in divorce actions to order property of the parties distributed to third parties. *See Patterson v. Patterson,* 242 Cal. App.2d 333, 51 Cal.Rptr. 339 (1 Dist.1966); *Giambrocco v. Giambrocco,* 161 Colo. 510, 423 P.2d 328 (1967); *Eich v. Gellerson,* 441 A.2d 315 (Me.1982); *Levine v. Levine,* 394 Mass. 749, 477 N.E.2d 402 (1985); *Melamed v. Melamed,* 286 N.W.2d 716 (Minn.1979); *Lynch v. Lynch,* 122 A.D.2d 589, 505 N.Y.S.2d 741 (N.Y.A.D.1986); *Williams v. Williams,* 428 P.2d 218 (Okla.1967). Some of these jurisdictions implicitly conclude that divide means to separate into only two parts. In some of these jurisdictions, the language of the applicable statute differs from HRS § 580–

47. For example, in *Levine v. Levine, supra,* the relevant statute authorized the court to "assign to either husband or wife all or any part of the estate of the other." 477 N.E.2d at 404.

Michigan has a third view, as follows:
The court has no jurisdiction to compel a party in a divorce to convey property to third parties, including the children of the parties. The parties themselves, however, are free to enter into a property settlement agreement which the court may confirm, even one which the court could not itself order if the case were contested.
*Merchant v. Merchant,* 130 Mich.App. 566, 343 N.W.2d 620, 623 (1983) (citations omitted).

ment, or divorce agreement, the family court must enter a divorce decree ordering the divorcing parties to convey the remainder interests in their respective parcels of real property to the children of their marriage, reserving life interests. "[A]ll valid and enforceable premarital agreements, marital agreements, and divorce agreements, even those entered into prior to June 6, 1987, must be enforced in divorce proceedings." *Epp v. Epp,* 80 Hawai'i 79, 86, 905 P.2d 54, 61 (App.1995). Dionicio's and Antonette's divorce case is such a case.

Prior to 1955, the judge in a divorce case did not have the power to divide and distribute the property of the parties. After the divorce, real property disputes were adjudicated in partition actions and personal property disputes were adjudicated in civil actions.

In 1955, Act 77 authorized the judge in a divorce case "to finally divide and distribute the estate, real, personal, or mixed, whether community, joint, or separate, in such proportion as shall appear just and equitable[.]" The purpose of Act 77 was "to confer upon the Judge who grants a final decree of divorce the power to make property settlements between the parties of all property[.]" Hse.Stand.Com.Rep. No. 499, in 1955 House Journal, at 697.

HRS § 580–47 (1993) states in relevant part as follows:

**Support orders; division of property.** (a) Upon granting a divorce, ..., the court may make such further orders as shall appear just and equitable ... (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate.... In making such further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, ... and all other circumstances of the case.

Prior to the enactment of HRS chapter 572D in 1987 (Hawai'i's Uniform Premarital Agreement Act) and the 1987 amendment of HRS § 572–22, the marital partners could not, by a valid premarital agreement, marital agreement, or divorce agreement, inhibit the

family court's jurisdictional power/authority, pursuant to HRS § 580–47(a), to "make such further orders as shall appear just and equitable ... (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate[.]" Thus, in *Lewis v. Lewis,* 7 Haw.App. 155, 159, 747 P.2d 698, 701 (1986), *aff'd in part and vacated in part,* 69 Haw. 497, 748 P.2d 1362 (1988), we concluded that "Hawai'i's public policy as stated in HRS § 580–47 takes precedence over the parties' right to enforce their antenuptial agreements." As a result of the enactment of HRS chapter 572D, however, the reverse is true. *Lewis v. Lewis,* 69 Haw. 497, 506, 748 P.2d 1362, 1365 (1988).

Similarly, as a result of Act 194 of the 1987 legislature, effective June 6, 1987, Hawai'i's public policy as stated in HRS § 580–47 no longer takes precedence over the parties' right to enforce their valid marital agreements and divorce agreements. Act 194 amended HRS § 572–22 as follows:

**Contracts.** A married person may make contracts, oral and written, sealed and unsealed, with [persons other than] her or his spouse, *or any other person,* in the same manner as if she or he were sole. [Spouses may contract with each other, as follows:

(1) By deed or assignment to or in favor of the other;

(2) By agreement settling their respective rights in property owned by them, or either of them, when the agreement is made in contemplation of divorce or judicial separation;

(3) By] *An* agreement *between spouses* providing for periodic payments for the support and maintenance of one spouse by the other, or for the support, maintenance, and education of children of the parties, when the agreement is made in contemplation of divorce or judicial separation[;], *is valid* provided that the agreement shall be subject to approval by the court in any subsequent proceeding for divorce or judicial separation and that future payments under an approved agreement shall nevertheless be subject to increase, decrease, or

termination from time to time upon application and a showing of circumstances justifying a modification thereof[;].

[ (4) By partnership agreements for business purposes;

(5) As provided in section 560:2–204.] *All contracts made between spouses, whenever made, whether before or after the effective date of this Act, and not otherwise invalid because of any other law, shall be valid.*

Act 194, § 1, 1987 Haw.Sess.Laws, at 434 (statutory material repealed is bracketed, new statutory material is underscored).

Although the following quote pertains to HRS § 572D–10 (Supp.1992) and premarital agreements, it applies equally to HRS § 572–22 (Supp.1992) and marital agreements and divorce agreements.

Section 10 of the Hawaii [Hawai'i] Act specifically states that such premarital agreements are valid and enforceable if otherwise valid as contracts. Unless the agreement rises to the level of unconscionability, a merely "inequitable" contract is not unenforceable under contract law. Furthermore, when a premarital agreement setting forth support and property division in the event of divorce is *not unconscionable* and has been *voluntarily* entered into by the parties with knowledge of the financial situation of the prospective spouse, enforcement of the agreement does not violate the principle of a "just and equitable" award under HRS § 580–47.

*Lewis v. Lewis,* 69 Haw. at 500–01, 748 P.2d at 1365–66 (footnote omitted; emphases in original).

Footnote 1 of *Lewis* further emphasizes the change: "Nor can it be said that enforcement of inequitable premarital agreements violates public policy as the Hawaii [Hawai'i] Act itself reflects a public policy in favor of enforcement of such agreements." *Id.* at 500 n. 1, 748 P.2d at 1366 n. 1.

Specifically with respect to marital agreements and divorce agreements, the House Judiciary Committee report on H.B. 771, which became Act 194, 1987, amending HRS § 572–22, provides additional support for *Lewis* in relevant part as follows:

The purpose of this bill is to permit spouses to make valid contracts with each other except in one limited circumstance and to ratify any interspousal contracts already made which may violate the existing law.

\* \* \* \* \* \*

Your Committee further finds that in view of contemporary societal standards, spouses no longer need the archaic protections from one another provided in the current law.

Your Committee has amended the bill to reinstate the provision requiring judicial approval of certain support and maintenance agreements when the agreement is made in contemplation of a divorce or legal separation. This provision was inadvertently proposed to be repealed.

Hse.Stand.Comm.Rep. No. 566, in 1987 House Journal, at 1366.

In other words, when a conveyance to nonparties is agreed to in a valid and enforceable premarital agreement, HRS § 572D–10 authorizes and requires the family court to order the conveyance. When a conveyance to nonparties is agreed to in a valid and enforceable marital agreement or divorce agreement, HRS § 572–22 authorizes and requires the family court to order the conveyance. In the Labayogs' divorce case, the conveyance to nonparties was agreed to in a valid and enforceable divorce agreement. Therefore, HRS § 572–22 authorized and required the family court to order the conveyance.

2. *Family Court's Jurisdiction to Enforce Divorce Decree's Orders after Dionicio's Death by Asserting Jurisdiction over the Co–Personal Representatives of Dionicio's Estate*

▮ The probate court could have enforced the order in the Divorce Decree pertaining to the Lohilani Property. The question is whether the family court was authorized to cause compliance with its Divorce Decree by replacing Dionicio with the Co–PRs of his estate and ordering those Co–PRs to comply with the Divorce Decree? Our answer is "yes."

The first question is whether the family court retained jurisdiction to enforce the Divorce Decree. The answer is "yes." It is well accepted that "[t]o the extent that a judgment of dissolution is not self-executing in respect of any division of property therein ordered, the court retains jurisdiction to make such further orders as are appropriate to compel obedience to its judgment." 24 Am.Jur.2d, *Divorce and Separation* § 959 (1983) (footnote omitted). In accordance with that principle, HFCR Rule 70(a) states as follows:

> *Failure to comply.* If a decree directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified by the court, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court ex parte provided that the party entitled to performance files an affidavit that the disobedient party failed to comply with the order within the time specified by the court and the act when so done shall have like effect as if done by the disobedient party. If there is no time specified in the decree or order[,] the party entitled to performance under this rule shall file appropriate pleadings against the disobedient party which shall be served in the manner provided for service in these rules.

The second question is whether the family court was authorized to replace Dionicio with the Co–PRs of his estate and to order them to comply with the Divorce Decree. Our answer is "yes."

The HUPC, codified in HRS chapter 560 (1993),[11] governs the Co–PRs and all probate matters. It states, in relevant part, as follows:

> § 560:1–201 General definitions. Subject to additional definitions contained in the subsequent Articles which are applicable to specific Articles or Parts, and

unless the context otherwise requires, in this chapter:

> \* \* \* \* \* \*

> (4) "Claims", in respect to estates of decedents and protected persons, include liabilities of the decedent or protected person whether arising in contract, in tort or otherwise, and liabilities of the estate which arise at or after the death of the decedent or after the appointment of a guardian of the property, including funeral expenses and expenses of administration. Except as indicated in section 560:3–805 [relating to classification of claims], the term does not include estate or inheritance taxes, or demands or disputes regarding title of a decedent or protected person to specific assets alleged to be included in the estate.[12]

> \* \* \* \* \* \*

> § 560:3–101 Devolution of estate at death; restrictions. The power of a person to leave property by will, and the rights of creditors, devisees, and heirs to the person's property are subject to the restrictions and limitations contained in this chapter to facilitate the prompt settlement of estates. Upon the death of a person, the person's real and personal property vests in the persons to whom it is devised by the person's last will . . ., or in the absence of testamentary disposition, in the person's heirs, . . ., subject to homestead allowance, exempt property and family allowance, to rights of creditors, elective share of the surviving spouse, and to administration.

> \* \* \* \* \* \*

> § 560:3–102 Necessity of order of probate for will. . . . to be effective to prove the transfer of any property . . ., a will must be declared to be valid by . . . an adjudication of probate by the court.

> \* \* \* \* \* \*

> § 560:3–104 Claims against decedent; necessity of administration. No proceeding to enforce a claim against the es-

---

**11.** Act 288 (1996) amends many parts of HRS chapter 560 (1993) effective January 1, 1997.

**12.** Act 288 (1996), effective January 1, 1997, amends HRS § 560:1–201(4) (1993). However, the amendment is not relevant to this appeal.

tate of a decedent or the decedent's successors may be revived or commenced before the appointment of a personal representative. After the appointment and until distribution, all proceedings and actions to enforce a claim against the estate are governed by the procedure prescribed by this Article. . . .

\*   \*   \*   \*   \*   \*

**§ 560:3–709 Duty of personal representative; possession of estate.** Except as otherwise provided by a decedent's will, every personal representative has a right to, and shall take possession or control of, the decedent's property, except that any real property or tangible personal property may be left with or surrendered to the person presumptively entitled thereto unless or until, in the judgment of the personal representative, possession of the property by the personal representative will be necessary for purposes of administration. The request by a personal representative for delivery of any property possessed by an heir or devisee is conclusive evidence, in any action against the heir or devisee for possession thereof, that the possession of the property by the personal representative is necessary for purposes of administration. The personal representative shall pay taxes on, and take all steps reasonably necessary for the management, protection and preservation of, the estate in the personal representative's possession. The personal representative may maintain an action to recover possession of property or to determine the title thereto.

\*   \*   \*   \*   \*   \*

**§ 560:3–711 Powers of personal representatives; in general.** Until termination of the personal representative's appointment a personal representative has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. This power may be exercised without notice, hearing, or order of court, except as provided in section 531–29 [relating

to confirmation of sales of real property by personal representatives].

\*   \*   \*   \*   \*   \*

**§ 560:3–715 Transactions authorized for personal representatives; exceptions.** Except as restricted or otherwise provided by the will or by an order in a formal proceeding and subject to sections 531–28.5 [relating to petitions to sell real property] and 531–29 [relating to confirmation of sales of real property], and the priorities stated in section 560:3–902 [relating to abatement], a personal representative, acting reasonably for the benefit of the interested persons, may properly:

\*   \*   \*   \*   \*   \*

(3) Perform, compromise or refuse performance of the decedent's contracts that continue as obligations of the estate, as the personal representative may determine under the circumstances. In performing enforceable contracts by the decedent to convey or lease land, the personal representative, among other possible courses of action, may:

(i) Execute and deliver a deed of conveyance . . .;

\*   \*   \*   \*   \*   \*

(22) Prosecute or defend claims, or proceedings in any jurisdiction for the protection of the estate and of the personal representative in the performance of the personal representative's duties;

\*   \*   \*   \*   \*   \*

**HRS § 560:3–803 Limitations on presentation of claims.** (a) All claims against a decedent's estate which arose before the death of the decedent, including claims of the State and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

\*   \*   \*   \*   \*   \*

(d) Nothing in this section affects or prevents:

(1) Any proceeding to enforce any mortgage, pledge, lien, or other secured interest upon property of the estate[.]

\* \* \* \* \* \*

§ 560:3–804 **Manner of presentation of claims.** Claims against a decedent's estate may be presented as follows:

\* \* \* \* \* \*

(2) The claimant may commence a proceeding against the personal representative in any court where the personal representative may be subjected to jurisdiction, to obtain payment of the claimant's claim against the estate, but the commencement of the proceeding must occur within the time limited for presenting the claim. No presentation of claim is required in regard to matters claimed in proceedings against the decedent which were pending at the time of the decedent's death.

\* \* \* \* \* \*

§ 560:3–806 **Allowance and disallowance of claims....**

(c)[13] A judgment in a proceeding in another court against a personal representative to enforce a claim against a decedent's estate is an allowance of the claim.

\* \* \* \* \* \*

§ 560:3–814 **Encumbered assets.** If any assets of the estate are encumbered by mortgage, pledge, lien, or other secured interest, the personal representative may pay the encumbrance or any part thereof, renew or extend any obligation secured by the encumbrance or convey or transfer the assets to the creditor in satisfaction of the creditor's lien, in whole or in part, whether or not the holder of the encumbrance has presented a claim, if it appears to be for the best interest of the estate. Payment of an encumbrance does not increase the share of the distributee entitled to the encumbered assets unless the distributee is entitled to exoneration.

\* \* \* \* \* \*

§ 560:3–909 **Improper distribution; liability of distributee or claimant.** Unless the distribution or payment no longer can be questioned because of adjudication, estoppel, or limitation, a distributee of property improperly distributed or paid, or a claimant who was improperly paid, is liable to return the property improperly received and its income since distribution if the distributee or claimant has the property. If the distributee or claimant does not have the property, then the distributee or claimant is liable to return the value as of the date of disposition of the property improperly received and its income and gain received by the distributee or claimant.

(Footnotes added.)

Antonette's interest is based on the Divorce Decree entered prior to Dionicio's death which ordered Dionicio to perform an obligation imposed upon him by his Pretrial Stipulation with Antonette. We are thus faced with a situation where a Divorce Decree entered prior to the decedent's death ordered the decedent to convey a parcel of real property to specified persons but the decedent failed to comply with the order before his death. We conclude that the family court may, in the divorce case, compel the Co–PRs to comply with the Divorce Decree and, toward that end, grant Antonette's motion for substitution of the Co–PRs as defendants in place of Dionicio.[14]

---

**13.** Act 288 (1996), effective January 1, 1997, redesignates § 560:3–806(c) (1993) as § 560:3–806(d).

**14.** Our conclusion is supported by Act 288 (1996), which becomes law on January 1, 1997. When it takes effect as amended by Act 288, HRS § 560:3–105 will state as follows:

*Proceedings affecting devolution and administration; jurisdiction of subject matter.* Persons interested in decedents' estates may apply to the registrar for determination in the informal proceedings provided in this article, and may petition the court for orders in formal proceedings within the court's jurisdiction including but not limited to those described in this article. The court has exclusive jurisdiction of formal proceedings to determine how decedents' estates, subject to the laws of this State, are to be administered, expended, and distributed. The court has concurrent jurisdiction of any other action or proceeding concerning a

Our conclusion is based on the following five reasons. The first reason is the broad powers given by the HUPC to the personal representative over the property of the decedent's estate. How broad those powers were intended to be is aptly described in the following commentary on articles III and IV of the HUPC:

### Articles III and IV

The key concept—changing the relationship between probate courts and personal representatives from what is now accepted in several states—is that the court or Registrar, though inevitably involved in the creation of the status of the personal representative, does not exercise supervisory jurisdiction over its appointee. Although the appointment had been secured in formal proceedings before the court or obtained in informal proceedings before the Registrar, the appointing authority has no authority to check the work of a personal representative or to make orders relating to him unless the representative or some other interested person petitions after the appointment for some order or relief concerning the estate.

Much of the bulk of Article III is a result of efforts to provide clear statutory duties, powers, and directions for personal representatives to enable appointees to handle the administrative aspects of estate settlement in the same manner that a trustee of a well-drafted trust discharges his responsibilities.

1 *Uniform Probate Code Practice Manual* 5 (R. Wellman 2d ed. 1977).

The second reason is that, if Dionicio's obligation to convey the Lohilani Property to the Five Children had been specified in a written contract not incorporated into the Divorce Decree, the Five Children would have been authorized by HRS § 535–1 to seek specific performance from the Co–PRs in circuit court rather than in probate court.

HRS § 535–1 (1993) provides as follows:

> succession or to which an estate, through a personal representative, may be a party, including actions to determine title to property alleged to belong to the estate, and of any

**Specific performance of decedent's contracts to convey real estate.** When any person, who is bound by a contract in writing to convey any real estate, dies before making the conveyance, the other party may commence an action in a circuit court to enforce a specific performance of the contract, the action to be commenced within one year after the grant of administration.

HRS § 535–1 does not specify whether the action it permits should be commenced against the personal representative(s) of the decedent's estate or against the person(s) in whom the real property vests pursuant to HRS § 560:3–101 upon the decedent's death. Based on the following, we conclude that the action it permits must be commenced against the personal representative(s).

HRS § 535–1 (1976) stated that

> When any person, who is bound by a contract in writing to convey any real estate, dies before making the conveyance, the other party may commence an action in a circuit court to enforce a specific performance of the contract by the heirs, devisees, or by the personal representative of the deceased party[.]

When HRS § 535–1 was amended in 1977, the legislature deleted the words "by the heirs, devisees, or by the personal representative of the deceased party" from the statute and gave the following reason for doing so:

> 48 . . . .
>
> *Reason:* In view of broad power of the personal representative (see, e.g., Section 3–715(3)), it does not seem appropriate to specify that the heirs or devisees be made parties to a complaint seeking specific performance. . . . In addition, your Committee points out that it does not seek to change the case law to the effect that specific performance of a contract to convey realty is not within the four month nonclaim provisions of Section 3–803 (see e.g., *Mossman vs. Hawaiian Trust Co.*, 45 Haw. 1, [361 P.2d 374] (1961)).

> action or proceeding in which property distributed by a personal representative or its value is sought to be subjected to rights of creditors or successors of the decedent.

Hse.Conf.Comm.Rep. No. 36, in 1977 House Journal, at 1259.

Since a written contract could have been enforced against the Co–PRs in circuit court not sitting in probate (circuit court), it follows a fortiori that the Divorce Decree can be enforced against the Co–PRs in the family court[15] rather than in the probate court.

The third reason is *Magoon v. Magoon*, 70 Haw. 605, 780 P.2d 80 (1989). In *Magoon*, the family court entered the divorce decree and reserved issues related to property division for further hearing. Before there was a further hearing, Magoon died. The personal representative of Magoon's estate was substituted in place of Magoon as the plaintiff in the divorce case. However, the family court concluded that since Magoon had died before the marital estate had been divided, the rights of the parties were controlled by chapters 560 (the HUPC) and 533 (relating to dower and curtesy) and not HRS § 580–47 (relating to the division of property in divorce cases). The Hawai'i Supreme Court held that where the divorce decree reserves the matter of the final division of the parties' property for further hearing and decision and a party dies before the hearing, the division should be effected in accord with the divorce statute rather than in accord with the Probate Code and the dower statute. Therefore, it ordered the family court to divide the property of the divorced parties. *Id.* at 614–15, 780 P.2d at 85–86.

■ The fact that, in a divorce case, the family court's reservation of jurisdiction to divide the property of the parties pursuant to HRS § 580–47 does not terminate upon the death of one of the parties and takes precedence over the Probate Code and the dower statute, supports our view that the family court's reservation of jurisdiction to cause a party to comply with the Divorce Decree does not terminate upon the party's death. In such a situation, both the family court and the probate court have jurisdiction to enforce the Divorce Decree.

■ The fourth reason pertains to the definition of "claims" in the HUPC. With respect to the estates of decedents, HRS § 560:1–201(4) (1993) excludes from the definition of "claims" all "demands … regarding title of a decedent." The motion to enforce the Divorce Decree's order requiring Dionicio to convey the Lohilani Property to the Five Children is a demand regarding title of a decedent. Therefore, it is not to be subject to the HUPC's claims procedure applicable in the probate case.

■ The fifth reason pertains to the HUPC's specification of the manner of presenting claims. Even if the motion to enforce the Divorce Decree's order requiring Dionicio to convey the Lohilani Property is regarded as a claim, HRS § 560:3–804(2) specifies that claims against a decedent's estate may, within the meaning of HRS § 560:1–201(4), be presented in one of three ways: (1) "[t]he claimant may deliver or mail to the personal representative a written statement of the claim … or may file a written statement of the claim in the form prescribed by rule, with the clerk of the court"; (2) "[t]he claimant may commence a proceeding against the personal representative in any court where the personal representative may be subjected to jurisdiction, to obtain payment of the claimant's claim against the estate"; and (3) "[n]o presentation of claim is required in regard to matters claimed in proceedings against the decedent which were pending at the time of the decedent's death." Therefore, the claim can be presented in a proceeding other than the probate case and in a court other than the circuit court acting in probate.

In summary, we conclude that in the absence of a statute or rule denying the family court jurisdiction to enforce its Divorce Decree against the Co–PRs or granting the probate court exclusive jurisdiction to enforce the Divorce Decree against the Co–PRs of Dionicio's estate, it follows that, until Dionicio or the Co–PRs complied with the Divorce Decree by conveying the Lohilani

**15.** HRS § 571–3 (1993) states in relevant part as follows:

**Family courts, divisions of circuit courts.** The family courts shall be divisions of the circuit courts of the State and shall not be deemed to be other courts as that term is used in the State Constitution[.]

Property or the time allowed by the applicable statute of limitations to bring an enforcement lawsuit had expired, the family court retained jurisdiction to enforce its Divorce Decree against the Co–PRs of Dionicio's estate.

### 3. Enforcement of the Divorce Decree Reduces the Size of the Estate Distributable to Heirs, Omitted Spouse, and Pretermitted Child

If a person successfully sued the personal representative of the decedent's estate under HRS § 535–1 for specific performance of the decedent's contract in writing to convey a parcel of real property, the rights of the person to whom the real property was conveyed would have priority over the rights of the heirs, an omitted spouse, and a pretermitted child.

If a person successfully sued the personal representative of the decedent's estate under HRS § 560:3–804(2) to obtain payment of the person's claim against the estate, the rights of the judgment creditor would have priority over the rights of the heirs, an omitted spouse, and a pretermitted child.

Similarly, where a divorce decree entered prior to the decedent's death ordered the decedent to convey a parcel of real property, the conveyance of the parcel of real property by the personal representatives of the decedent's estate pursuant to the family court's enforcement order would reduce the size of the decedent's estate distributable to the heirs, an omitted spouse, and a pretermitted child. *Magoon v. Magoon, supra.*

█ In this case, Dionicio's duty to convey the Lohilani Property arose before he died. The inclusion of the Lohilani Property in Dionicio's estate is subject to the mortgage and the Divorce Decree. Since the Divorce Decree's order has at least as much priority as Dionicio's contract in writing to convey real estate would have, Dionicio's net estate cannot be enhanced for the benefit of his heirs, omitted spouse and pretermitted child, and to the detriment of the beneficiaries under the Divorce Decree by Dionicio's failure, prior to his death, to comply with the Divorce Decree's order requiring him to convey the Lohilani Property to the Five Children. Therefore, Dionicio's duty to convey pursuant to the Divorce Decree and the rights of the persons to whom he had a duty to convey have priority over the rights of his heirs, his omitted spouse, and his pretermitted child.

### C. Case Law in Support of our Opinion

Our decision is supported by, and we agree with, the opinion of the Illinois Appellate Court in *Shilvock v. Shilvock,* 31 Ill.App.2d 254, 175 N.E.2d 272 (1961).

In *Shilvock,* the husband and the first wife were divorced in 1957. The divorce decree required that if the husband predeceased the first wife, the first wife would be entitled to one-half of 1,393 shares of stock that he owned. The husband's will placed the stock in trust and directed the trustee to convey one-half of the 1,393 shares to the first wife. The husband then married the second wife. Upon the husband's death, the first wife petitioned in the divorce case for enforcement of the divorce decree. The executor/trustee of the husband's estate/trust responded that the second wife claimed an interest in the stock. The court ordered compliance with the divorce decree. When the executor/trustee failed to comply, the court responded to first wife's petition by ordering the conveyance to be made within ten days. Before the conveyance was made, the second wife sought leave to intervene on the basis that the stock was an asset of the estate and that an award of the stock to the first wife would diminish her share. The second wife appealed from the denial of her request for intervention and from the order mandating the conveyance to the first wife. On appeal, the appellate court concluded that "both the [Family] and Probate Courts could properly exercise jurisdiction over the subject matter of this controversy. Concurrent jurisdiction of the courts over the identical subject is not unusual and occurs frequently in probate matters." *Id.* at 260, 175 N.E.2d at 275. It also concluded that the divorce court's denial of the second wife's petition to intervene was in error. *Id.* at 264, 175 N.E.2d at 277. However, after deciding that the points raised in her petition to intervene

were without merit, it concluded that the error was harmless. *Id.*

## CONCLUSION

Accordingly, in Appeal No. 16096 (the divorce case), we: (1)(a) dismiss for lack of appellate jurisdiction the appeal of the part of the March 30, 1992 Order Denying Motion to Reconsider Order Granting Motion for Substitution of Parties and Motion to Intervene (March 30, 1992 Order) that declined to reconsider the March 2, 1992 Order Granting [Antonette's] February 19, 1992 Motion for Substitution of Parties; (b) conclude that the part of the March 30, 1992 Order that denied permission to Felicitas to intervene was harmless error; and (2) remand for the enforcement of the Divorce Decree's order requiring Husband to convey, to his First Marriage Children, his remainder interest in the Lohilani Property and to do so by substituting the Co–PRs of Husband's estate in Husband's place as a party in the divorce case and ordering the Co–PRs to comply with the Divorce Decree.

In Appeal No. 16310 (probate case) of the July 20, 1992 Order Denying Petition to Remove [Co–PRs], we: (1)(a) dismiss for lack of appellate jurisdiction the appeal of the part of the probate court's order that declined to remove and replace the Co–PRs; (b) vacate that part of the order that declined to order the Co–PRs to include the Lohilani Property (Tax Map Key No. 1–3–7–75) in the probate inventory of Dionicio's estate; and (2) remand for entry of an order requiring the inclusion of the Lohilani Property in the inventory of Dionicio's estate, with the proviso that the listing must state that the Lohilani Property is subject to the mortgage and the Divorce Decree's order requiring Dionicio to convey it to the Five Children, subject to a reservation of a life interest.

ACOBA, Judge, dissenting.

I disagree with the majority's analysis and conclusion.

Confusion reigns in this case because the probate court incorrectly deferred jurisdiction over a probate asset in favor of the family court.

I believe that this case should be resolved on the basis of the inherent subject matter jurisdictions of the probate and family courts and the exercise of comity between them. I would, therefore, remand the case for disposition in the probate court.

### I.

### A.

The probate court had initial subject matter jurisdiction over the Co–PRs and the Lohilani property (the property). The family court's command that Dionicio convey the remainder interest in the property to the children of his first marriage was part of the divorce judgment; that judgment was enforceable in the probate court, as any other judgment would be.[1] Accordingly, there was no need to refer the matter to the family court.

Despite its apparent jurisdiction, the probate court noted "probable jurisdiction" in the family court to enforce the terms of the divorce decree. On that basis, the probate court denied Felicitas's motion to remove the Co–PRs, or in the alternative, to require that the Co–PRs list the property in the decedent's estate, when it should have retained control over the case and exercised its own jurisdiction.

### B.

For its part, the family court should have deferred jurisdiction over enforcement of the divorce decree to the probate court.

The family court was aware that probate proceedings had commenced and that the purpose of the family court action was to substitute the Co–PRs for Dionicio and to have them convey the property to the Five Children. But, as the parties acknowledged in oral argument, this substitution was, in fact, an empty gesture. The Co–PRs, in what may have been an attempt to keep the property from Felicitas's reach in the pro-

---

1. In light of the fact that the divorce decree was an enforceable judgment, the majority opinion's extensive discussion concerning contracts between spouses appears unnecessary.

bate court, had not listed the property as a probate asset—a duty they were legally obligated to perform under the probate code. *See* Hawai'i Revised Statutes § 560:3–706 (1993).[2]

Thus, even if the family court obtained personal jurisdiction over the Co–PRs, the Co–PRs could convey nothing. As Co–PRs, they could only convey probate property, and because of their non-feasance or misfeasance, the property had not been included in Dionicio's probate estate.

Because the Co–PRs had nothing to convey, the family court had nothing upon which to act. At that point, the family court should have granted Felicitas's motion for reconsideration of the order granting substitution and referred the case back to the probate court as a matter of comity.

If the case were returned to the probate court, the order requiring the Co–PRs to list the property as part of the probate estate and the enforcement of Dionicio's obligation would flow naturally and logically from the probate court's appointment of the Co–PRs and its plenary control over the probate estate.

### C.

The majority opinion, however, requires dual disposition of the case and a continuation of dual jurisdiction over the same probate asset.

Under the majority's ruling, the probate case is remanded to the probate court with an order to list the property as part of the probate estate and with a proviso that the property be listed as subject to the "encumbrance" of the divorce decree's order requiring conveyance to the Five Children.[3]

Concurrently, according to the majority, the family court case is remanded to the family court. On remand, the family court is instructed to enforce the divorce decree order requiring Dionicio to convey his remainder interest to the Five Children by substituting the Co–PRs in Dionicio's place and ordering the Co–PRs to comply with the divorce decree.[4]

### D.

With all due respect, I believe the majority approach in this case and in future cases invites confusion, inter-court conflict, "forum shopping,"[5] and undue expense and delay to the parties.

In a somewhat similar situation, it was said that concurrent judicial disposition of the same issue is disfavored because it "would be wasteful of court time and energy. It would involve the hazard of confusing or unseemly discord between two courts ... concerning essentially the same controversy. [And][i]t

---

2. Hawai'i Revised Statutes (HRS) § 560:3–706 (1993) provides that "a personal representative ... shall prepare and file ... an inventory of property owned by the decedent at the time of the decedent's death, listing it with reasonable detail and indicating as to each listed item, its fair market value as of the date of the decedent's death, if known with reasonable accuracy, and the type and amount of any encumbrance that may exist with reference to any item."

3. I question whether a requirement in a divorce decree to convey a remainder interest in land to third parties is the type of "encumbrance" contemplated by HRS § 560:3–706, *supra*. *See* HRS § 560:3–814 (enumerated examples of encumbrances on estate assets include mortgage, pledge, lien, or other secured interest).

4. The majority opinion states that "[u]nless Felicitas was afforded the opportunity to stop the family court from ordering the Co–PRs to comply with the Divorce Decree, her claim (as an omitted spouse) and her son's claim (as a pretermit-

ted child) to the Lohilani property may have been impaired or impeded."

Although the majority concludes that Felicitas had the right to intervene in the divorce proceedings under Hawai'i Family Court Rules Rule 24(a) and that the family court erred in denying Felicitas's motion to intervene, it effectively bars Felicitas from intervening on remand by holding, in advance of the family court hearing, that the trial court's denial of her motion was "harmless error."

5. It appears from the record that in a January 29, 1992 letter to the probate court, the Co–PRs' attorney stated that Antonette was planning to pursue disposition of the property in the family court. The Co–PRs counsel requested that "the matter regarding the real property ... be determined by the Family Court" rather than the probate court. Less than one month later, Antonette filed her motion in family court to substitute the Co–PRs appointed by the probate court in place of Dionicio.

would encourage the practice of 'forum shopping,' which is inimical to sound judicial administration." *Jordan v. Hamada*, 64 Haw. 446, 448, 643 P.2d 70, 72 (1982) (quoting *Pacific Gas & Electric Co. v. Federal Power Comm'n*, 253 F.2d 536, 541 (9th Cir.1958)).

This case was subject to primary disposition in the probate court and should have been disposed of there. Allowing the matter to be maintained in the family court compounds the expense and delay engendered by the shunting of probate matters between two courts and the "hazard" of confusion and conflict in the ultimate disposition of the probate asset. I see no valid reason for promoting the unnecessary dual disposition of the issues raised before us or to signal the approval of this approach in future cases.

Act 288 (1996), which was recently enacted to amend Hawai'i's Uniform Probate Code, supports the approach laid out in this dissent. The Act makes provision for the comprehensive disposition of decedents' estates in the probate court. Under the amended version of the law, the probate court would have "exclusive jurisdiction" of formal proceedings to determine how decedents' estates are to be "administered, expended, and distributed." The probate court also would have "concurrent jurisdiction of any other action or proceeding concerning a succession or to which an estate, through a personal representative, may be a party...." [6] In my opinion, the Act only makes explicit what is already implicitly required in any reasonable accommodation of tasks and responsibilities between the probate court and other courts.

Granting the probate court "exclusive jurisdiction" over the administration and distribution of decedents' estates and "concurrent jurisdiction" over "any other action" in which an estate may be a party is an indication that the law expressly seeks to include within the probate court's jurisdiction, matters obviously relating to and having an impact on the administration and disposition of the probate estate.

Act 288 (1996) adopts verbatim § 3-105 of the Uniform Probate Code (UPC). According to the Comment to § 3-105 of the UPC, "[t]he important point is that the [probate] court, ... should have unlimited power to hear and finally dispose of all matters relevant to determination of the extent of the decedent's estate and of the claims against it." [7] Uniform Probate Code (U.L.A.) § 3-105 cmt. at 228 (1993). Under the instant facts, this case would fall within the "concurrent jurisdiction" of the probate court as set forth in the amended probate code.

## II.

As a final matter, I believe this court should not have reached the question of whether the denial of a motion to remove a personal representative is an appealable collateral order.

After considerable discussion, the majority opinion holds that the probate court's denial of Felicitas's motion for removal of a personal representative is not an appealable collateral order. However, it is concluded, without discussion or citation to legal authority, that appellate consideration of this case is based on "a probate court's decision that a parcel of real property is not a part of the decedent's estate."

6. Act 288 (1996) will take effect on January 1, 1997. As amended by Act 288, HRS § 560:3-105 will state in relevant part as follows:

*Proceedings affecting devolution and administration; jurisdiction of subject matter.*

. . . . .

The court has exclusive jurisdiction of formal proceedings to determine how decedents' estates, subject to the laws of this State, are to be administered, expended, and distributed. The court has concurrent jurisdiction of any other action or proceeding concerning a succession or to which an estate, through a personal representative, may be a party, including actions to determine title to property alleged to belong to the estate, and of any action or proceeding in which property distributed by a personal representative or its value is sought to be subjected to rights of creditors or successors of the decedent.

7. The Judicial Council Committee on Uniform Probate Code (UPC) and Probate Court Practices considered Articles 1-4 of the 1993 UPC as suitable for introduction *in toto*. Testimony of Carroll S. Taylor on H.B. 3637 to the House Committee on Judiciary (Feb. 23, 1996). The Judicial Council Committee did not recommend any changes to § 3-105 of the UPC.

If the majority rests appellate jurisdiction on the appealability of a failure to list a probate asset in the estate inventory, it is unnecessary to decide that the denial of a motion to remove a personal representative is not an appealable collateral order. I would leave that issue to another time.

Injustice and great hardship may be prevented by appellate review of a challenged personal representative appointment. *See In re Estate of Georgiana*, 312 Pa.Super. 339, 458 A.2d 989 (1983) (holding that "an order denying a petition for removal of an executor is a final order proper for appellate review" because "[where the executor is an individual], deferral of review may mean that the assets of the estate will be dissipated or destroyed in the interim), *aff'd*, 504 Pa. 510, 475 A.2d 744 (1984); *see also Collins v. Miller*, 198 F.2d 948, 950–51 (D.C.Cir.1952) (holding district court's order dismissing petition for removal of administrator was a final and appealable order because it finally disposed of the appellant's claimed right to remove the administrators and "clothed them with authority to complete the administration[,]" and because it would be too late to review the order upon final distribution of the estate, when the appellant's right to prompt and proper administration of the estate would "be lost, probably irreparably").

While a personal representative who acts improperly may be personally liable, this would be a hollow remedy where the personal representative becomes insolvent or financially unstable, or where the remedy is long delayed because the administration of the estate is substantially completed before an appeal may be taken.

For the foregoing reasons, I respectfully dissent.