EDMUND WONG, Petitioner, *v.* ARTHUR S. K. FONG,
Judge of the Circuit Court of the First Circuit, State of
Hawaii, HERMAN LUM, Judge of the Circuit Court of
the First Circuit, State of Hawaii, TRANSPORTATION
LEASE HAWAII, LTD., JAY DEE PENN, PHILIP B.
STERRY and FUJIYAMA, DUFFY, FUJIYAMA &
KOSHIBA, Respondents

NO. 7284

APRIL 12, 1979

RICHARDSON, C.J., OGATA and MENOR, JJ.,
RETIRED JUSTICES MARUMOTO and KOBAYASHI
ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* This is an original proceeding seeking issuance of a writ of mandamus. The proceeding was initiated upon the denial by the circuit court of Petitioner's motion for disqualification of attorneys. Due to circumstances which

have come to the attention of this Court subsequent to the issuance of the order to show cause in this matter, the petition for writ of mandamus will be denied.

The facts in this case — although somewhat involved — are largely uncontroverted. Essentially, this case involves an allegation of concurrent representation of adverse interests by a law firm. The respondent law firm of Fujiyama, Duffy, Fujiyama & Koshiba ("Fujiyama firm") represented the Petitioner, Dr. Edmund Wong ("Petitioner"), in a lawsuit and, during part of the same period, represented Respondent Transportation Lease Hawaii, Ltd. ("Trans Lease"), in another separate and distinct lawsuit in which Trans Lease sought damages against Petitioner.

The complaint in the latter action (Civil No. 51906) was filed on June 27, 1977, in the circuit court of the first circuit. The plaintiff therein was one Jay Dee Penn, who sought damages against Trans Lease on the ground of coercion in the execution of a loan discharge agreement. Under the terms of that agreement, Petitioner was a guarantor of Penn's performance of the agreement. The circuit court found Penn to be in default of the agreement, and it issued a permanent injunction in favor of Trans Lease on November 17, 1977. On December 5, 1977, Trans Lease filed in that action an amended counterclaim in which damages in the amount of $200,000 were sought against Petitioner on the basis of his status as Penn's guarantor. At the time of the filing of the counterclaim, Trans Lease was represented by the law firm of Damon, Shigekane, Key & Char ("Damon firm").

Subsequently, on December 14, 1977, a dental malpractice action (Civil No. 53311) was filed against Petitioner in the circuit court of the first circuit. The Fujiyama firm undertook representation of Petitioner in that action,[1] and the firm filed an answer to the complaint on behalf of Petitioner. As far as

---

[1] It appears that the Fujiyama firm was initially retained on behalf of Petitioner by his malpractice insurance carrier. There is no doubt, however, that an attorney-client relationship existed between Petitioner and the Fujiyama firm. *Moritz v. Medical Protective Co.*, 428 F.Supp. 865 (W.D. Wis. 1977); *Zalta v. Billips*, 81 Cal. App.3d 183, 144 Cal.Rptr. 888 (1978); *Hartford Fire Ins. Co. v. Masternak*, 55 App. Div.2d 472, 390 N.Y.S.2d 949 (Sup.Ct. 1977).

we can tell, the attorney who was primarily responsible for the defense of Civil No. 53311 was Wallace S. Fujiyama.

On September 28, 1978, the Damon firm withdrew as counsel for Trans Lease in Civil No. 51906. At the same time, the Fujiyama firm, through Wallace S. Fujiyama, entered its appearance as counsel for Trans Lease in that case. This appearance occurred without Petitioner's knowledge or consent. The Fujiyama firm has to this date continued to represent Trans Lease in Civil No. 51906.[2]

Up until January 12, 1979, Bendet & Fidell ("Bendet firm"), Petitioner's attorneys in Civil No. 51906, were unaware of the fact that the Fujiyama firm was also representing Petitioner in Civil No. 53311. Upon learning of the Fujiyama firm's representation of Petitioner in the malpractice action, the Bendet firm contacted Wallace S. Fujiyama to discuss the possibility of a conflict of interest due to the Fujiyama firm's concurrent representation of Trans Lease. A series of oral and written communications followed between and among Petitioner's Bendet firm attorneys, Wallace S. Fujiyama and Petitioner. The end result of these communications was that although Petitioner and his Bendet firm attorneys requested that the Fujiyama firm withdraw from representation of Trans Lease, the Fujiyama firm was willing only to withdraw as Petitioner's counsel in the malpractice action.

Therefore, on January 18, 1979, Petitioner filed a motion for disqualification of the Fujiyama firm in Civil No. 51906.[3] Subsequent to a hearing on the motion, Respondent Circuit Judge Fong denied Petitioner's motion for disqualification in Civil No. 51906, and he correspondingly allowed the Fujiyama firm to withdraw as Petitioner's counsel in Civil No. 53311.

The instant petition was filed on February 2, 1979, with Petitioner requesting that this Court require Respondent Judge Fong to reverse his order denying the motion for dis-

---

[2] Trial in that action was set for January 22, 1979.

---

[3] For administrative reasons, the motion was not marked by the circuit court as "filed" until January 22, 1979.

qualification and to require that Respondent Fujiyama firm withdraw as attorneys for Trans Lease in Civil No. 51906. On March 16, 1979, we issued a temporary writ prohibiting Respondent Circuit Judge Lum and all other judges of the circuit court of the first circuit from conducting trial on the merits in Civil No. 51906. An order to show cause on the petition for writ of mandamus was issued jointly.

Respondent Trans Lease filed a memorandum in opposition to the petition for writ of mandamus on March 21, 1979. In that memorandum, it was revealed for the first time to this Court — as well as to Petitioner and his Bendet firm attorneys — that Civil No. 53311 had been settled and that a stipulation for dismissal with prejudice in that case had been filed on February 23, 1979.[4] It is this latest revelation which causes us to hold that the petition should be denied.

This Court has stated that while an interlocutory appeal may not be taken from an order denying a motion for disqualification of counsel, *Gomes v. Heirs of Kauwe*, 52 Haw. 126, 472 P.2d 119 (1970), a writ of mandamus may be brought where irreparable and immediate harm would otherwise result. *Community Broadcasting of Boston, Inc. v. FCC*, 546 F.2d 1022 (D.C. Cir. 1976). A writ of mandamus is, however, an extraordinary remedy which will ordinarily be invoked only in exceptional circumstances amounting to a judicial "usurpation of power". *Kerr v. United States*, 426 U.S. 394, 402 (1976).

We recognize the existence of authority to the effect that where the relationship between an attorney and his client is an active and existing one, adverse representation is prima facie improper.[5] *International Business Machines Corp. v.*

---

[4] By a Withdrawal and Appearance of Counsel filed in circuit court on February 13, 1979, the Fujiyama firm withdrew as counsel for Petitioner in that case. The record does not reveal whether settlement of the action had been concluded as of that date.

[5] Therefore, the "substantial relationship" test advocated by Respondents Fujiyama firm and Trans Lease would not normally be applicable in a concurrent representation situation. The "substantial relationship" test, by which the propriety of disqualification is assessed by the degree to which counsel's adverse client relationships are similar in terms of subject matter, possible revelation of confidences, and other related factors, may properly be applied only where the potential

*Levin,* 579 F.2d 271 (3d Cir. 1978); *Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384 (2d Cir. 1976); *In re Kelly,* 23 N.Y.2d 368, 244 N.E.2d 456, 296 N.Y.S.2d 937 (1968); *Grievance Committee v. Rottner,* 152 Conn. 59, 203 A.2d 82 (1964); *see* dicta in *City Council v. Sakai,* 58 Haw. 390, 570 P.2d 565 (1977). Nevertheless, we need not assess the propriety of the Trans Lease representation undertaken by the Fujiyama firm while the firm was Petitioner's counsel in the malpractice action, for we are of the opinion that in view of the dismissal stipulated to in Civil No. 53311, and also in view of the fact that the record herein does not show that the Fujiyama firm acquired any confidential or prejudicial information during the existence of its attorney-client relationship with Petitioner, no actual harm could henceforth be suffered by Petitioner. *Cf. Lau v. Valu-Bilt Homes, Ltd.,* 59 Haw. 283, 582 P.2d 195 (1978) (denial of late motion to disqualify is harmless if there is no evidence of *actual prejudice* to former client).

The reasons underlying the view that representation of adverse clients in ongoing lititgation is prima facie improper have been stated in *International Business Machines Corp. v. Levin, supra:*

> We think, however, that it is likely that some "adverse effect" on an attorney's exercise of his independent judgment on behalf of a client may result from the attorney's adversary posture toward the client in another legal matter. For example, a possible effect on the quality of the attorney's services on behalf of the client being sued may be a diminution in the vigor of his representation of the client in the other matter. A serious effect on the attorney-client relationship may follow if the client dis-

---

conflict arises between a present client and a former client of the attorney. *Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384 (2d Cir. 1976).

Of course, now that Civil No. 53311 has been dismissed, the "substantial relationship" test may arguably be invoked in view of Petitioner's technical status as a "former" client of the Fujiyama firm. Other than noting that the record herein fails to reveal any kind of "substantial relationship" between the representations in Civil No. 53311 and Civil No. 51906, however, we find it unnecessary to conduct any in-depth analysis of the propriety of disqualification under that test.

covers from a source other than the attorney that he is being sued in a different matter by the attorney. The fact that a deleterious result cannot be identified subsequently as having actually occurred does not refute the existence of a likelihood of its occurrence, depending upon the facts and circumstances, at the time the decision was made to represent the client without having obtained his consent.

579 F.2d at 280 (citations omitted). These concerns, particularly those relating to reduction of vigor and independence in representation, are simply no longer applicable to Petitioner, for his attorney-client relationship with the Fujiyama firm has terminated.

It has, of course, been stated that because "an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests," disqualification may be the only appropriate remedy in these circumstances. *Cinema 5, supra* at 1387. However, we feel that disqualification at this point would be an empty ritual, for the evils which that remedy was intended to cure would have been dissipated. Disqualification of the Fujiyama firm at this point would be wasteful in terms of time and money thus far expended in the firm's preparation for Civil No. 51906. *Cf. Government of India v. Cook Industries, Inc.*, 569 F.2d 737 (2d Cir. 1978) (client whose attorney is disqualified incurs a loss of time and money in being compelled to retain new counsel who in turn must become familiar with complexities of the litigation).

We do not, however, ignore the ethical considerations pointed out to us by Petitioner.[6] We nonetheless believe that these ethical concerns should not be the subject of adjudication by this Court upon the state of the record in this mandamus proceeding. We merely conclude that in view of the

---

[6] Petitioner maintains that the Fujiyama firm's concurrent representation of adverse clients constitutes a violation of Canon 5 ("A lawyer should exercise independent professional judgment on behalf of a client") and Canon 9 ("A lawyer should avoid even the appearance of professional impropriety") of our Code of Professional Responsibility. He urges that, in order to maintain the ethical standards of the legal profession and to uphold public confidence in counsel, disqualification of the Fujiyama firm is a necessity.

present elimination of any actual or potential conflict of interest by virtue of the dismissal of Civil No. 53311, no irreparable harm would inure to Petitioner so as to justify the issuance of the extraordinary writ. *See Gomes v. Heirs of Kauwe, supra.*

Nothing stated in this opinion should be construed as a comment upon the character and professional integrity of Mr. Fujiyama and the members of his firm. We believe, however, that any lingering concern regarding ethical matters would best be cleared in separate disciplinary proceedings instituted by Petitioner.[7]

The temporary writ of prohibition issued on March 16, 1979, is hereby dissolved, and the petition for writ of mandamus is dismissed.

*Jay M. Fidell and Wesley H. Sakai, Jr. (Bendet & Fidell* of Counsel), for Petitioner.

*Donald A. Browns (Fujiyama, Duffy, Fujiyama & Koshiba* of Counsel) for Respondents *Fujiyama, Duffy, Fujiyama & Koshiba* and Transportation Lease Hawaii, Ltd.

---

[7] We thus express no opinion as to the Fujiyama firm's protestation of innocence as to the dual representation on the ground of its asserted ignorance of the singular identity of the "Edmund Wong" named in both Civil No. 53311 and Civil No. 51906.

Nor do we express any opinion as to the effect of the Fujiyama firm's contention that *Petitioner himself knew* as early as October, 1978, of that firm's representation of Trans Lease and that Petitioner failed to seek disqualification of the Fujiyama firm until the date for trial was nearly at hand. *See Lau v. Valu-Bilt Homes, Ltd., supra.*

Further, the record is bare as to the Fujiyama firm's participation, if any, in the settlement of Civil No. 53311. In the event that Petitioner is dissatisfied with the result in that case, he has more direct means of seeking a remedy than disqualification of the Fujiyama firm in Civil No. 51906.