Banks, J.
This is an interlocutory appeal pursuant to Maddocks v. Ricker, 403 Mass. 592, 597-600 (1988) brought by plaintiff N. Sacca & Sons, Inc. (“Sacca”) to challenge the trial court’s disqualification of plaintiffs counsel for an alleged conflict of interest violative of the Code of Professional Conduct, S.J.C. Rule 3:07, DR 5-105. See also, as to rightto interlocutory appeal of disqualification orders, Borman v. Borman, 378 Mass. 775 (1979); Byrnes v. Jamitkowoski, 29 Mass. App. Ct. 107, 109 n.3 (1990).
The report indicates that on May 31, 1991, Attorney Michael S. Levitz of the lawfirm Corwin & Corwin filed this suit on behalf of Sacca against defendant East Coast Excavators, Inc. for subcontract excavation work performed by Sacca, and against defendant United States Fidelity and Guaranty Company (“USF&G”) for its failure to pay the undisputed balance of the subcontract work in violation of G.L.c. 93A and 176. At the time this suit was filed against USF&G, Corwin & Corwin represented USF&G as a defendant in Suffolk Superior Court Civil Action #90-3178, Village Forge v. Black Mountain Welding, Inc., et al. (“Village Forge Action”). On August 21, 1991, USF&G filed a motion to disqualify Corwin & Corwin as Sacca’s counsel on the grounds that *7 such representation violated Disciplinary Rules 5-105 (B) and 5-105 (C) which state:
(B) Alawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will oris likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105 (C).
(C) In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.
At the September 6, 1991 motion hearing, Corwin & Corwin asserted by affidavit that its representation of USF&G in the Village Forge action was secondary to its representation of the primary defendant who was the principal on a lien bond issued by USF&G; that its sole contact with USF&G had been to provide information on the status of the case; and that a settlement of that case, including dismissal as to USF&G, had been agreed upon prior to the institution of the present suit. Corwin & Corwin further averred that subsequent to the settlement of the Village Forge action, its continued appearance of record as counsel for USF&G was solely the result of a clerical mistake which had delayed the filing of a stipulation and thus the formal termination of the Village Forge action until August 21, 1991.
USF&G relies on the general rule enunciated by the Supreme Judicial Court in McCourt Company, Inc. v. FPC Properties, Inc., 386 Mass. 145 (1982) that the simultaneous representation of one client against another requires disqualification unless consented to by both parties. The Court held that under S.J.C. Rule 3:07, DR5-105 (B), a law firm could represent the interest of only one party at a time, however remote the likelihood of actual conflicts of interest.
Corwin & Corwin asserts that the McCourt case, wherein the law firm sought to maintain simultaneous representation of the parties involved, is distinguishable from the present case in that Corwin & Corwin’s relationship with USF&G was purely nominal, requiring only a clerical act to terminate it in accordance with the agreement for settlement of the Village Forge action. We do not reach the question of whether the proposed distinction is sufficient to avoid the seemingly absolute rule of McCourt since we find that at the time of the trial court hearing of the disqualification motion, simultaneous representation of any kind by Corwin & Corwin had ceased. Nothing in the McCourt case or in the Code suggests that disqualification of a law firm on the grounds of simultaneous representation is intended as a penalty to be imposed after the fact upon the firm or upon the second client. The thrust of disqualification is that the offending condition, simultaneous representation, may not be allowed to continue. At the time of the disqualification hearing in this case, Corwin & Corwin had, in fact, concluded its relationship with USF&G; USF&G’s status was that of a prior, not a simultaneous, client.
USF&G correctly asserts that it would be entitled, as a prior client, to protection through disqualification from the release of any confidences or secrets available to Corwin & Corwin by reason of the parties’ former relationship. Masiello v. Perini Corp., 394 Mass. 842, 848 (1985). There is, however, not the slightest suggestion that such a situation exists in the present case. Moreover, USF&G has not claimed that it has been prejudiced in the instant matter in any way by the very brief period of simultaneous representation, however tardily Corwin & Corwin may have acted in filing the stipulation of dismissal in the Village Forgex action to conclude the relationship. In these circumstances, “disqualification... would be an empty ritual, for the evils which *8 that remedy was intended to cure would have been dissipated.” Wong v. Fong, 593 P.2d 386, 390 (Hawaii 1979).
In light of the foregoing, we conclude that the right of the plaintiff, N. Sacca & Sons, Inc., to counsel of its choice need not be subordinated to any claimed interest of defendant USF&G in this case, and that the motion for disqualification should have been denied.
Accordingly, the trial court’s allowance of defendant USF&G’s motion for the disqualification of plaintiff s counsel is hereby reversed. This case is returned to the Cambridge Division.