WENDY M. COKE & others[1] *vs.* EQUITY RESIDENTIAL
PROPERTIES TRUST
(and a companion case).

Suffolk. September 5, 2003. - December 11, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Attorney at Law,* Canons of ethics, Conflict of interest, Disqualification.
*Practice, Civil,* Moot case. *Moot Question.*

This court dismissed as moot a petition by the defendant in a civil action for
interlocutory review of an order entered by a judge to the effect that Mass.
R. Prof. C. 1.7, 426 Mass. 1330 (1998), governing conflicts of interest, did
not mandate the disqualification of counsel for the plaintiffs who had
become a member of a law firm that at the time acted as counsel for the
defendant in other matters, where, after the judge had issued his decision
concerning disqualification and after the defendant had filed its initial brief
in this court, the defendant terminated its entire relationship with the law
firm. [514-517] COWIN, J., concurring, with whom SPINA, J., joined.

CIVIL ACTIONS commenced in the Superior Court Department
on September 28, 1999, and March 3, 2000.

Motions for instructions and to disqualify legal counsel were
heard by *Allan van Gestel,* J.

An application for leave to prosecute an interlocutory appeal
was allowed by *Scott L. Kafker,* J., in the Appeals Court, and
the appeal was reported by him to a panel of that court. The
Supreme Judicial Court on its own initiative transferred the case
from the Appeals Court.

*Stephen J. Brake (Larissa K. W. Booras* with him) for the
defendant.

*Thomas R. Kiley (Daniel H. Conroy & John O. Mirik* with
him) for the plaintiffs.

MARSHALL, C.J. The defendant, Equity Residential Properties
Trust (Equity), seeks interlocutory review of an order entered

---

[1]Andrew E. Adelson and James W. Rappaport, all individually and as
representatives of the former partners of Charles River Park "D" Company.

by a judge in the Superior Court to the effect that Mass. R. Prof. C. 1.7, 426 Mass. 1330 (1998),[2] governing conflicts of interest does not mandate the disqualification of counsel for the plaintiffs, where the plaintiffs' counsel of record, Mark A. Berthiaume, became a member of the law firm Seyfarth Shaw (Seyfarth), which at the time acted as counsel for Equity in other matters. Pursuant to G. L. c. 231, § 118, Equity petitioned a single justice of the Appeals Court for interlocutory review of the judge's order, who reported the matter to a full panel.[3] We transferred the cases to this court on our own motion. We now dismiss the petition as moot.

1. *Background.* The facts, which are not disputed, giving rise to Equity's motion to disqualify Seyfarth are as follows. In September, 1999, the plaintiffs, former partners of Charles River Park "D" Company (Charles River), filed an action in the Superior Court against Equity, followed by a second action in March, 2000. The two actions, later consolidated, apparently alleged breaches of contracts and breaches of the covenants of good faith and fair dealing arising from the transfer of certain interests in Charles River to a limited partnership.[4] In January, 2000, Berthiaume, at the time a partner in the law firm of Schnader Harrison Goldstein & Manello (Schnader Goldstein), entered his appearance on behalf of the plaintiffs in both actions.

[2]Rule 1.7 of the Massachusetts Rules of Professional Conduct, 426 Mass. 1330 (1998), states:

"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation.

"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."

[3]Equity's petition also requested that the single justice "treat the [p]etition as a renewed motion to disqualify" Berthiaume and Seyfarth.

[4]The record on appeal does not include copies of the complaints, and the precise allegations of the plaintiffs against Equity are not clear. The allegations are, however, irrelevant to our decision.

On July 10, 2001, a judge in the Superior Court allowed the plaintiffs' motion for summary judgment and denied Equity's cross motion for summary judgment in the first action. A final judgment amended in the first action entered on September 3, 2002, and in the second action on September 23, 2002. Both Equity and the plaintiffs appealed from the final judgments: Equity appealed from the allowance of summary judgment for the plaintiffs, while the plaintiffs, still represented by Berthiaume, appealed from so much of the order as concerned prejudgment interest.

Shortly after the notices of appeal were filed in the Superior Court, Berthiaume's law firm, Schnader Goldstein, dissolved. On January 1, 2003, Berthiaume became a member of Seyfarth, working in its Boston office. Before Berthiaume joined the firm, Seyfarth conducted an internal "due diligence" review to identify any possible conflicts of interest between Seyfarth's existing clients and clients of Berthiaume whom he would continue to represent if (and when) he became a member of Seyfarth. The conflict check revealed that Equity was a current client of Seyfarth with matters unrelated to the Massachusetts contract action pending in offices other than Boston. Sometime before January, 2003, the firm informed Berthiaume of that fact, but also informed him, incorrectly as it turned out, that Equity had consented to Berthiaume's continued representation of the plaintiffs in the Massachusetts action. Equity, in fact, neither had been informed of, nor had consented to, Berthiaume's or Seyfarth's continued representation of the plaintiffs.

When Equity discovered for itself that Berthiaume, now a Seyfarth partner, represented the plaintiffs, by letter dated January 24, 2003, it demanded that Seyfarth withdraw its representation of the plaintiffs. On February 5, 2003, presumably in response to that letter, Seyfarth filed in the Superior Court an "emergency motion for instructions" regarding the "competing demands" of its clients Equity and Charles River. On February 12, 2003, Equity filed a cross motion to disqualify both Berthiaume and Seyfarth from continuing to represent Charles River. The motions were considered by the same judge who had earlier

entered summary judgment.[5] On February 27, 2003, after
"balancing" the interests of Seyfarth's two clients and counsel's
duty of loyalty to each, the judge denied Equity's disqualifica-
tion motion.[6] The judge noted that his ruling also provided
"instructions" to the parties, as requested by Seyfarth.

2. *Discussion.* We consider first whether the issue of Berthi-
aume's disqualification is now moot. After the Superior Court
judge issued his decision concerning disqualification, and after
Equity had filed its initial brief here, Equity terminated its
entire relationship with Seyfarth, a circumstance noted briefly in
Equity's reply brief.[7] Equity argues that the issue of disqualifica-
tion is not moot because to rule otherwise would provide a cli-
ent in these circumstances with a "Hobson's choice": to enforce
a lawyer's duty of loyalty as expressed in rule 1.7, the client
would be required to continue to retain the lawyer whom it
believed had violated that very duty. We conclude otherwise.

Rule 1.7, by its terms, prohibits a lawyer from representing
"a client" whose interests are directly adverse to those of
"another client," unless the lawyer "reasonably believes the
representation will not adversely affect the relationship with the
other client" and "each client consents after consultation."
Several courts have concluded that if, as here, the lawyer no
longer represents a client because the client has, in essence,
fired the lawyer, disqualification of the lawyer from continuing

[5]Rule 10 (a) (1) of the Massachusetts Rules of Appellate Procedure, 435
Mass. 1601 (2001), provides that, within "ten days after receiving from the
clerk of the lower court notice of assembly of the record . . . each appellant,
including each cross-appellant, shall pay to the clerk of the appellate court the
docket fee fixed by law, and the clerk shall thereupon enter the appeal of such
appellant or cross-appellant upon the docket." In this case, the docket in the
Superior Court contains no indication that a "notice of assembly of the rec-
ord" has been forwarded to counsel. See Mass. R. A. P. 9 (d), as appearing in
378 Mass. 935 (1979). Thus, no appeal from the amended judgment in the
Superior Court has been entered on the docket of the Appeals Court. Mass.
R. A. P. 10 (a) (1). The Superior Court judge thus correctly concluded that he
had jurisdiction to rule on the motions.

[6]Equity sought to have both Seyfarth and Berthiaume disqualified; the
judge's ruling applied specifically to Berthiaume.

[7]No affidavit or motion to expand the record on appeal has been filed by
Equity. At oral argument, counsel for Equity confirmed that Equity is no
longer represented by Seyfarth in any matters, and that all attorney-client
relationships between Equity and Seyfarth have been terminated, a fact not
challenged by either Seyfarth or the plaintiffs.

to serve another existing client serves no purpose, even assuming that a violation of rule 1.7 may have existed at some point in time. See, e.g., *Hartford Acc. & Indem. Co.* v. *RJR Nabisco, Inc.*, 721 F. Supp. 534, 540-542 (S.D.N.Y. 1989) (disqualification not warranted where client left firm after complaint was filed because "the relationships between the firms and clients" were "not continuing"); *Wong* v. *Fong*, 60 Haw. 601, 605-606 (1979) (where attorney-client relationship terminated when separate litigation resolved, and where no record that confidential or prejudicial information obtained during litigation, disqualification "would be an empty ritual, for the evils which that remedy was intended to cure would have been dissipated"). See also *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 624, 627, 632 (S.D. Ohio 1984) (no disqualification required where firm voluntarily withdrew from representing client in unrelated action after motion to disqualify was filed and no confidential information exchanged); Crystal, Disqualification of Counsel for Unrelated Matter Conflicts of Interest, 4 Geo. J. Legal Ethics 273, 310 (1990) (judges should deny motions for disqualification where there is no longer conflict of interest because disqualification is "needlessly expensive way" to respond to wrongful conduct; firm can be "punished for any misconduct by damage award or disciplinary action"). But see *Unified Sewerage Agency of Wash. County* v. *Jelco, Inc.*, 646 F.2d 1339, 1345 n.4 (9th Cir. 1981) (present-client standard continues to apply even though representation ceases prior to filing of motion to disqualify to preclude attorneys from converting "present" client into "former" client by choosing when to cease to represent disfavored client).

It is important that, in this case, Equity has made no claim that any duty of confidentiality has been violated by Seyfarth, or that it is actually harmed by Berthiaume's continued representation of the plaintiffs. See *Tipton* v. *Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1498-1499 (11th Cir. 1989) (disqualification not warranted where law firm representing defendant in one action and representing plaintiff in unrelated property matter withdrew from latter action and where no indication that confidential information had been obtained); *Hartford Acc. & Indem. Co.* v. *RJR Nabisco, Inc.*, *supra* at 540-

541 (disqualification not warranted where no indication firm obtained confidential information from former client and no claim of actual prejudice if firm continued to represent remaining client). It is also important to note that it was Equity's unilateral decision to terminate its relationship with Seyfarth, not Seyfarth's decision to cease representing Equity. See *id.* at 541 ("Court is not faced with a client abandoned by its counsel, or by counsel who will represent their clients with anything less than full vigor").

There have been occasions where we have answered a question in a case that is moot because the issue is "one of public importance, where it was fully argued on both sides, where the question was certain, or at least very likely to arise again in similar factual circumstances," especially where appellate review "could not be obtained before the recurring question would again be moot." *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 783 (1984). But motions to disqualify by their nature are intensely fact specific. See *Hartford Acc. & Indem. Co.* v. *RJR Nabisco, Inc., supra* at 541 n.7. Whatever decision we might reach concerning the judge's decision is unlikely to offer guidance in the future.[8] We express no opinion on the judge's ruling, which touches on an unsettled and vigorously debated area of professional ethics. See, e.g., American Bar Association Committee on Ethics and Professional Responsibility, Formal Op. 95-390 (1995) (with three members dissenting). See also Green, Conflicts of Interest in Litigation: The Judicial Role, 65 Fordham L. Rev. 71, 74-76 (1996) (discussing spectrum of judicial responses to violations of conflicts of interest standards and disqualification motions).

We also express no opinion as to the propriety of Berthiaume's continuing to represent the plaintiffs when he became a partner at Seyfarth, or of Seyfarth's permitting him to do so. See *Wong* v. *Fong, supra* at 607 n.7. We recognize that, "[i]n this day of frequent firm reorganizations and lateral transfers, [a

---

[8]For example, in this case Berthiaume did not join Seyfarth until after final judgment had entered in the Superior Court and notices of appeal had been filed, and he did so only after having been erroneously informed that Equity had consented to his continued representation of Charles River. We think it unlikely that a motion to disqualify will arise in these same circumstances in the future.

wooden application of the conflict of interest canons] would merely invite an increased number of disqualification motions, born of little more than hardball litigation strategy sessions and advanced where there is no threat of actual prejudice." *Hartford Acc. & Indem. Co.* v. *RJR Nabisco, Inc., supra* at 541. In cases of lateral transfers or law firm mergers every effort should be made, however, to ensure that clients are apprised of any potential conflicts to avoid the circumstances that occurred here. We continue to be of the view that, "[p]utting it as mildly as we can, we think it would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned." *McCourt Co.* v. *FPC Props., Inc.*, 386 Mass. 145, 149 (1982), quoting *Cinema 5, Ltd.* v. *Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976).

The petition for interlocutory review is dismissed.

*So ordered.*

Cowin, J. (concurring, with whom Spina, J., joins). I agree with the court that the issue of Attorney Mark A. Berthiaume's disqualification is moot because there is no longer a dual representation that may disqualify him. Even if a conflict of interest resulting in a violation of Mass. R. Prof. C. 1.7, 426 Mass. 1330 (1998), may have existed at one time, it arose only after Equity Residential Properties Trust appealed from the Superior Court judge's grant of summary judgment and ended when Equity terminated its relationship with the law firm of Seyfarth Shaw, just after the initiation of this interlocutory review and prior to the underlying appeal. On this record, a ruling on whether Berthiaume's past dual representation required disqualification serves no purpose.

I write separately because the court proceeds to discuss Berthiaume and Seyfarth's actions, intimating that were it not for the fortuitous events that rendered this issue moot, we would have reviewed the facts of the case and determined whether dual representation was justified in this instance. Important factors would have included whether any duty of confidentiality

had been violated, whether Equity had been apprised of potential conflicts, and whether the motion to disqualify was a response to actual or threatened prejudice to Equity or merely a litigation strategy. This is troubling because it implies that there are circumstances in which this kind of dual representation is permissible, and suggests that this court currently possesses the comprehensive understanding of the issue that is necessary to make such a ruling. I view these implicit conclusions as inappropriate and premature.

Against a backdrop of increasing law firm reorganizations and mergers, lateral transfers, and the rise of large-scale firms that transcend State and national borders, the issue of dual representation is one of multifaceted overtones and novel complexity. The proper interpretation of rule 1.7 in this shifting landscape requires not a decisional law approach, but systematic consideration. At this time, we cannot assume that Berthiaume and Seyfarth's actions were permissible, nor should we categorically rule out a per se disqualification in such circumstances. Instead, we should engage in a coherent study of the problems of dual representation in the organization of contemporary firms and the interplay between rule 1.7 and motions to disqualify, seeking input from the bar and, in particular, from those firms that such a study is most likely to affect. The proper outcome of such a study should be an addition or amendment to the Massachusetts Rules of Professional Conduct. To the extent that the court suggests that these issues should be dealt with on a case-by-case basis, I do not join in the opinion.