Salinger, Kenneth W., J.
The Gillette Company is unhappy that one of its former in-house patent lawyers, Chester Cekala, is now working for a competitor. The original complaint alleged that four other Gillette employees went to work for ShaveLogic, Inc., and took with them trade secrets or other confidential information belonging to Gillette. Gillette has amended its complaint to add claims that (i) Cekala is breaching his ongoing fiduciary duties to his former client by helping ShaveLogic compete with Gillette,[1] (ii) ShaveLogic’s chief executive officer (Robert Wilson) and president (Duwayne Miller), together with several other defendants, have aided and abetted Cekala in breaching his fiduciary duly to Gillette, and (iii) all of the Defendants have conspired to help Cekala breach his fiduciary duties to Gillette. Cekala, Wilson, and Miller now move to dismiss all claims against them.
The Court concludes that the first amended complaint does not state a viable claim for breach of fiduciary duly against Cekala. It is perfectly lawful for Gillette’s former patent attorney to help a competitor avoid infringing Gillette patents, so long as he does not disclose or use any confidential information obtained from Gillette. The facts alleged by Gillette do not plausibly suggest that Cekala misused any confidential information belonging to Gillette or that Cekala’s work for ShaveLogic is otherwise “substantially related” to anything he did for Gillette within the meaning of Mass. R. Prof. Conduct 1.9.
Since the alleged breach of fiduciary duty is a necessary element of the aiding and abetting claim and so much of the conspiracy claim alleging that other defendants conspired with Cekala in breaching his fiduciary duty, those claims must also be dismissed. The Court will therefore ALLOW the motion to dismiss.
1. Factual Allegations and Legal Claims
The first amended complaint that Gillette filed in January 2016 alleges the following facts and makes the following claims with respect to the issues raised in the pending motion to dismiss.
Cekala worked as a patent lawyer for Gillette from 1987 to 1990 and again from 1992 through May 2006. While he represented Gillette as its lawyer, Cekala “had access to privileged communications and information” regarding Gillette’s patents and technologies. Cekala also developed “detailed knowledge” of *328 Gillette’s patents and related licensing agreements while he was employed by Gillette.
ShaveLogic competes with Gillette in the market for wet shaving products. Cekala started working for ShaveLogic on patent matters in June 2012. He became employed by ShaveLogic as its general counsel in April 2013. Cekala still holds that position today. ShaveLogic has told its investors and prospective business partners that Cekala’s “intimate knowledge of Gillette’s intellectual property portfolio and patent strategy” gives ShaveLogic “a competitive edge in the market.” ShaveLogic hired Cekala “to provide freedom to operate opinions respecting Gillette patents, including patents whose prosecution he oversaw, and to identify potential voids in Gilllette’s patent portfolio.” While employed by ShaveLogic, Cekala has also provided similar assistance to other companies that compete with Gillette.
Gillette claims that Cekala has represented Shave-Logic in matters that are substantially related to those in which he previously represented Gillette, that Cekala has done so without Gillette’s consent, and that as a result Cekala has breached his continuing fiduciary duty to Gillette. Gillette further claims that ShaveLogic and its chief executive officer Robert Wilson, its president Duwayne Miller, and its employees John Griffin and William Tucker have all aided and abetted Cekala in breaching his fiduciary duty to Gillette. Finally, Gillette claims that all of the Defendants have conspired “to cause Cekala to breach his fiduciary duly to Gillette.”
2. Legal Standard
To survive a motion to dismiss under Mass.R.Civ.P. 12(b)(6), a complaint must allege facts that, if true, would “plausibly suggest! 1 an entitlement to relief.” Lopez v. Commonwealth, 463 Mass. 696, 701 (2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). For the purpose of deciding Thornton’s motion to dismiss Fritz’s complaint, the Court must assume that the factual allegations in the complaint and any reasonable inferences that may be drawn from the facts alleged are true. See Golchin v. Liberty Mat. Ins. Co., 460 Mass. 222, 223 (2011). In so doing, however, it must “look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief.” Maling v. Finnegan, Henderson, Farabow, Garrett & Danner, LLP, 473 Mass. 336, 339 (2015), quoting Curtis v. Herb Chambers 1-95, Inc., 458 Mass. 674, 676 (2011).
3. Analysis
3.1. Scope of Fiduciary Duty
Cekala owes a continuing fiduciary duty to Gillette even though he stopped representing Gillette in patent matters ten years ago. However, the scope of Cekala’s fiduciary duty to Gillette today is narrower than the broad duty of undivided loyalty that Cekala owed to Gillette when he represented the company as its in-house patent lawyer.
During the time that Cekala worked for Gillette, his ethical and fiduciary obligations to avoid any conflicting representation were defined by Mass. R. Prof. Conduct 1.7. See Maling, 473 Mass, at 339-40; RFF Family Partnership, LP v. Burns & Levinson, LLP, 465 Mass. 702, 718-19 (2013). Rule 1.7 provides that a lawyer may not simultaneously represent two clients where the representation of one is “directly adverse” to the other, or even if the representation of one “will be materially limited” by the need to avoid a conflict with the other, without informed written consent from each client. Under this rule, “a lawyer ordinarily may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated.” Rule 1.7, comment 6; see also comment 7 (same with respect to unrelated transactional matters). “The purpose of rule 1.7 is twofold”—it serves both “to protect confidences that a client may have shared with his or her attorney,” and also to “safeguard loyalty as a feature of the lawyer-client relationship.” Maling, supra, at 340, quoting SWS Fin. Fund A v. Salomon Bros., Inc., 790 F.Sup. 1392, 1401 (N.D.Ill. 1992).
The ethical rules governing conflicts arising from a lawyer’s prior representation of a former client are different. Cekala’s continuing duties to Gillette are governed by Mass. R. Prof. Conduct 1.9 and 1.10, not by Rule 1.7. See Adoption of Erica, 426 Mass. at 58 n.3, 60-61 & n.7; see also Maling, supra, at 339 (Rule 1.7 “applies to conflicts of interest between current clients”); Coke v. Equity Residential Properties Trust, 440 Mass. 511, 512-17 (2003) (Rule 1.7 does not apply where lawyer no longer represents client).
“Even after termination of the attorney-client relationship, a lawyer remains bound” to preserve the former client’s confidences and secrets. Bays v. Theran, 418 Mass. 685, 691 (1994), quoting Masiello v. Perini Corp., 394 Mass. 842, 847 (1985). “(W]hen an attorney has ceased to represent a client, a conflict of interest may arise in representing a new client because of the attorney’s continuing duty to preserve a former client’s confidences.” Adoption of Erica, 426 Mass. 55, 60 (1997). But that does not mean that lawyers are automatically barred from representing a current client whose interests are somehow inconsistent with those of a former client. See Slade v. Ormsby, 69 Mass.App.Ct. 542, 546 (2007).
Representation of a current client impermissibly conflicts with a lawyer’s duty to a former client only when the matter for the new client is both “ ‘adverse’ to the interests of the former client” and also “substantially related” to work the lawyer had done for the former client. Adoption of Erica, supra, at 61. This principle is now codified as follows:
A lawyer who has formerly represented a client in a matter shall not thereafter represent another *329 person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
Mass. R. Prof. Conduct 1.9(a). Thus, unlike with respect to simultaneous representations governed by Rule 1.7, no impermissible conflict arises merely because the interests of a current client are adverse to those of a former client. Such a conflict only arises where, in addition, there is a substantial relationship between the current and former representations.
This “[prohibition of successive representation arises from ‘the attorney’s duty ... to preserve his [former] client’s confidences and secrets.’ ” R&D Muller, Ltd. v. Fontaine’s Auction Gallery, LLC, 74 Mass.App.Ct. 906, 907 (2009), quoting Bays, supra; accord Wellman v. Willis, 400 Mass. 494, 499 (1987) (“the substantial relationship standard was developed primarily to protect the client who would not otherwise be able to prove a breach of his confidence”) (quoting Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1334 (1981)). “Under the ‘substantial relationship’ test, a subsequent representation is proscribed ‘on the sole ground that the later suit, simply because of its substantial relation to the former one, exposes the attorney to an intolerably strong temptation to breach his duty of confidentiality to the former client.’ ” Bays, 418 Mass. at 691, quoting Note, 94 Harv.L.Rev. at 1318.
With respect to the “materially adverse” prong of Rule 1.9, representation of one client is not “adverse” to the interests of another client, for the purposes of lawyers’ ethical obligations, merely because the two clients compete economically. See Maling, 473 Mass. at 341-42. “[D]irect adverseness requires a conflict as to the legal rights and duties of the clients, not merely conflicting economic interests.” Id., quoting American Bar Ass’n Standing Comm, on Ethics and Prof. Resp., Formal Op. 05-434, at 140 (Dec. 8, 2004). Thus, “the fact that an attorney is simultaneously representing two companies that are competitors in the same industry does not itself establish an actionable breach of an attorney’s fiduciary duty.” Id. at 342, quoting Curtis v. Radio Representatives, Inc., 696 F.Sup. 729, 736 (D.D.C. 1988), and D.J. Horan & G.W. Spellmire, Jr., Attorney Malpractice: Prevention and Defense 17-1 (1987). Although Maling involved a potential conflict between two existing clients, the same principle applies to a claimed conflict between a lawyer’s past representation of a former client and current work on behalf of an existing client. See Mass. R. Prof. Conduct 1.9, comment 3 (giving as example that “a lawyer who has previously represented a client in securing environmental permits to build a shopping center . . . would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent”).
With respect to the “substantially related” prong of Rule 1.9, “[m]atters are ‘substantially related’ ... if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client’s position in the subsequent matter.” See Rule 1.9, comment 3. Two different matters do not constitute the “same transaction or legal dispute” merely because they involve closely related issues. “[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.” Id., comment 2. Thus, “[i]n the case of an organizational client, general knowledge of the client’s policies and practices ordinarily will not preclude a subsequent representation.” Id., comment 3. The second part of the substantially related test quoted above focuses on whether representation of an existing client may implicate confidential information learned from a former client. Thus, “[i]nformation that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying.” Id. “[T]he fact that a lawyer has once served a client ordinarily does not preclude the lawyer from using generally known information about the client when later representing another client.” Id., comment 8.
3.2. Alleged Breach of Fiduciary Duty
The facts alleged in Gillette’s amended complaint do not plausibly suggest that Cekala has breached any fiduciary duty owed to Gillette under Mass. R. Prof. Conduct 1.9, because they do not suggest that Cekala’s current representation of ShaveLogic and alleged assistance to other companies is “materially adverse” to Gillette’s legal interests or that it is “substantially related” to any work Cekala did on behalf of Gillette.
3.2.1. Economic Competition in General
Gillette’s allegations that Cekala was hired by ShaveLogic to help it figure out how to compete with Gillette without infringing on any of Gillette’s patents do not plausibly suggest that Cekala has breached his fiduciary duty to Gillette. The Supreme Judicial Court recently held that a patent lawyer may simultaneously represent two clients in prosecuting patent applications for inventions that compete in the same market, so long as the claims asserted in each application are neither identical nor obvious variants of each other, and thus neither application would interfere with and bar allowance of the other. Maling, 473 Mass, at 341-44. The mere fact that two patent applications are in the “same patent space,” and involve products that compete in the same market, does not make the interests of the two clients “directly adverse” within *330 the meaning of Rule 1.7. Id. It necessarily follows that the interests of ShaveLogic are not “materially adverse” to those of Gillette within the meaning of Rule 1.9 merely because ShaveLogic seeks to compete by selling shaving products that are designed so as not to infringe upon any patent held by Gillette.
The allegations that Cekala developed expertise regarding the scope and meaning of some of Gillette’s patents while he worked for Gillette as a patent attorney are beside the point. Patents are public documents that may be read and analyzed by anyone. See, e.g., Festo Corp. v. Shoketsu Kinzoku Kogyou Kamushiki Co., Ltd., 535 U.S. 722, 731 (2002). A patent describes with specificity the invention that has been patented and “apprise[s] the public of what” is not covered by the patent and thus “is still open to them.” Markman v. Westview Instruments, Inc., 517 U.S. 370, 373 (1996), quoting McClain v. Ortmayer, 141 U.S. 419, 424 (1891). That is the whole point. “(T]he patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time.” Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 63 (1998). As noted above, nothing in Rule 1.9 bars a lawyer from using publicly available information, including what is disclosed in a patent, to help a current client compete economically with a former client. If Gillette were seeking to enforce a non-competition agreement, it could not bar Cekala “from using the skill and general knowledge acquired or improved through his employment” at Gillette to help a competitor like ShaveLogic. See, e.g., Abramson v. Blackman, 340 Mass. 714, 715-16 (1960). As the SJC has explained:
[A]n employer cannot by contract prevent his employee from using the skill and intelligence acquired or increased and improved through experience or through instruction received in the course of the employment. The employee may achieve superiority in his particular department by every lawful means at hand, and then, upon the rightful termination of his contract for service, use that superiority for the benefit of rivals in trade of his former employer.
Richmond Bros., Inc. v. Westinghouse Broadcasting Co., Inc., 357 Mass. 106, 111 (1970), quoting Club Aluminum Co. v. Young, 263 Mass. 223, 226-27 (1928). Similarly, nothing in Rule 1.9 bars Cekala from using knowledge and intelligence regarding public matters like patents that he acquired while working for Gillette and using that expertise on behalf of a competitor. See Rule 1.9, comments 3 and 8.
3.2.2. Specific Gillette Patents
Gillette alleges several times in the amended complaint that Cekala is advising ShaveLogic on how to avoid infringing Gillette patents the prosecution of which was managed and overseen by Cekala. These allegations do not state a viable claim for breach of fiduciary duly either, for several reasons.
First, Gillette’s amended complaint does not identify a single patent or describe any technology that Cekala worked on at Gillette and is now working on for ShaveLogic. Gillette’s conclusory assertion that Cekala’s work for ShaveLogic implicates specific Gillette patents that he worked on while employed by Gillette is not sufficient to state a claim in the absence of supporting factual allegations plausibly suggesting that this assertion is true. See Maling, 473 Mass. at 339. “While ‘detailed factual allegations are not required at the pleading stage, mere ‘labels and conclusions’ will not survive a motion to dismiss.” Burbank Apartments Tenant Ass’n v. Kargman, 474 Mass. 107, 116 (2016), quoting Iannacchino, 451 Mass. at 636, and Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 557.
Second, it would be futile for Gillette to further amend its complaint to bolster this assertion with factual allegations, because the complaint would still not state a viable claim that Cekala’s current work for ShaveLogic is substantially related to work he did to help prosecute and obtain patents for Gillette. If Cekala is in fact helping ShaveLogic avoid infringing patents he worked on for Gillette, then Gillette could plausibly assert that Cekala’s work for ShaveLogic is materially adverse to Gillette’s interests. See Maling, 473 Mass, at 344 (providing opinion as to whether invention of one client would infringe upon patent obtained by second client “arguably would have rendered the interests of [the two clients] ‘directly adverse’ within the meaning of rule 1.7(a)(1)”). But since Cekala no longer serves as Gillette’s attorney, to state a claim for breach of fiduciary duty Gillette must also allege facts plausibly suggesting that Cekala’s work for ShaveLogic is “substantially related” to the work he previously performed for Gillette. See Mass. R. Prof. Conduct 1.9; Adoption of Erica, 426 Mass. at 61.
The successful prosecution of a particular patent for a former client “is not substantially related” to a later representation concerning whether a different client has infringed that patent because, “in patent law, ‘[v]alidity’—and thus patentability—’and infringement are distinct issues, bearing different burdens, different presumptions, and different evidence.’ ” Finalrod IP, LLC v. John Crane, Inc., No. 7:15-CV-97-DAE, 2016 WL 866930, at *5 (W.D.Tex. 2016), quoting Commil USA, LLC v. Cisco Sys., Inc., 135 S.Ct. 1920, 1929 (2015). The mere fact that both representations involved the same patent is not enough to establish that the two matters are substantially related within the meaning of Rule 1.9. Id.; see also Boston Scientific Corp. v. Mirowski Family Ventures, LLC, No. 1:11-cv-736-WTL-DKL, 2012 WL 1982114, *6 (S.D.Ind. 2012) (no appearance of impropriety where lawyer that helped prosecute patent on behalf of former client later defends second client against claim of patent infringe *331 ment, without contesting validity of patent); Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc., 727 F.Sup.2d 469, 473 (E.D.Va. 2010) (“Identity of the intellectual property at issue is not dispositive; substantial relatedness must encompass the underlying legal issues”).
This would be a different case if Gillette were claiming that Cekala was helping ShaveLogic to challenge the validity of patents he helped to prosecute and obtain for Gillette. Cf. Sunbeam, supra, at 471 & 474 (plaintiffs law firm disqualified because associate had previously represented defendant in analyzing patent-ability of its product, and defendant was relying on that work in challenging validity of plaintiffs patent). Indeed, Defendants properly conceded this point at oral argument. “(T]he ‘substantial relationship’ test” now codified in Rule 1.9 “operates by assuming that confidences were transmitted in the former attorney-client relationship.” Bays, 418 Mass. at 691. As Gillette correctly notes, any confidential information that Cekala learned while helping to prosecute patents for Gillette, for example through prior art searches or discussions with the inventors, could conceivable be used against Gillette if the validity of those patents were under attack by ShaveLogic.
In contrast, questions about whether any ShaveL-ogic product or planned product infringes on a Gillette patent do not implicate information known to Gillette but not disclosed in the patent or the accompanying, and now public, patent prosecution history. Gillette’s undisclosed intentions and understandings regarding its patented technology or its patent strategy have no bearing on whether ShaveLogic’s products infringe on any patent held by Gillette. A competing product or process infringes an existing patent only if the challenged product or process falls within the scope of at least one of the enumerated claims in the patent. Markman, 517 U.S. at 374. The Court recognizes that in some patent infringement cases the judge responsible for construing the patent claims will consider extrinsic evidence, usually from experts, “in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period.” Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S.Ct. 831, 841 (2015). But Gillette alleges no facts plausibly suggesting that anything Cekala learned while helping Gillette prosecute and obtain certain patents is substantially related to any issue likely to arise regarding whether a ShaveLogic product infringes on a Gillette patent.
3.2.3.Privileged Information in General
Finally, Gillette’s conclusoiy allegation that Cekala has disclosed and used unspecified “privileged information” obtained from Gillette in representing Shave-Logic and assisting other competitors of Gillette is also insufficient to state a claim that Cekala’s current work is substantially related to work he did for Gillette. The amended complaint neither identifies nor describes any allegedly privileged information that Cekala has improperly disclosed or otherwise misused. The Court recognizes that Gillette “is not required to reveal the confidential information learned by [its former] lawyer in order to establish a substantial risk that the lawyer has confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter.” Mass. R. Prof. Conduct 1.9, comment 3. But a conclusoiy allegation unsupported by any factual allegation is not enough to state a claim. Maling, 473 Mass. at 339. Gillette’s conclusoiy and unexplained allegation that Cekala has disclosed and used “privileged information with respect to Gillette’s patent, trade secret, and litigation strategy” is therefore not enough to state a claim that Cekala is using confidential factual information obtained from Gillette to benefit ShaveLogic. See, e.g., All Business Solutions, Inc. v. Nations Line, Inc., 629 F.Sup.2d 553, 558-59 (W.D.Va. 2009) (dismissing trade secret claim); Washburn v. Yadkin Valley Bank and Trust Co., 660 S.E.2d 577, 585-86 (N.C.Ct.App. 2008) (affirming dismissal of trade secret claim).
3.3.Claims for Civil Conspiracy and Aiding and Abetting
The claims for conspiring with and for aiding and abetting Cekala are entirely derivative of the claim against Cekala for breach of fiduciary duty. Since the claim for breach of fiduciary duty fails as a matter of law, it follows that the other defendants cannot be liable for conspiring with Cekala to breach his fiduciary duties or for aiding and abetting Cekala in breaching any such duties. There can be no civil conspiracy without “an underlying tortious act.” Bartle v. Berry, 80 Mass.App.Ct. 372, 383-84 (2011) (“To prove their claims for civil conspiracy, the plaintiffs must show an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement”). Similarly, there can be no liability for aiding and abetting a breach of fiduciary duty in the absence of a breach of fiduciary duty. Arcidi v. National Ass'n of Govt. Employees, Inc., 447 Mass. 616, 623 (2006).
3.4.Dismissal with Prejudice
The pending motion to dismiss was served on Gillette over three months ago. Gillette has had ample time to serve and file a motion to further amend its complaint, if it believed that it could cure any defect in its pleading by augmenting the factual allegations of its first amended complaint. At oral argument, the Court asked Gillette whether it could cure any of the pleading problems raised by Defendants through a further amendment. In response, Gillette made clear that it does not wish to do so, and instead relies on its arguments that the facts alleged in its amended complaint state viable claims against and concerning Cekala. In sum, Gillette has failed to describe any *332 further amendment to its complaint that would not be futile.
Under these circumstances, the Court concludes in the exercise of its discretion that Gillette’s claims against and concerning Cekala should be dismissed with prejudice. See Johnston v. Box, 453 Mass. 569, 582-84 (2009) (where complaint fails to state a viable claim, plaintiff has neither moved to amend its complaint nor “adequately describe[d] [any] contemplated amendment” in enough detail to allow “court to determine the merits of the motion,” and in any case filing an amended complaint “would likely have been futile as a matter of law,” court may dismiss action with prejudice and without first giving plaintiff opportunity to seek leave to amend complaint) (quoting Nett v. Bellucci, 437 Mass. 630, 645 (2002)).
ORDER
Defendants’ motion to dismiss the claims against Chester Cekala, Robert Wilson, and Duwayne Miller is ALLOWED. Counts V and VI of the First Amended Complaint, which assert claims for breach of fiduciary duty against Cekala and for aiding and abetting Cekala’s alleged breach of fiduciary duty against most of the other Defendants, are both dismissed with prejudice in their entirely. Count IX, which asserts a claim for civil conspiracy, is dismissed with prejudice as against Cekala, Wilson, and Miller, and to the extent it alleges that any other defendant has conspired to cause Cekala to breach his fiduciary duly to The Gillette Company. This order resolves all claims against Cekala, Wilson, and Miller.

 Gillette does not claim that Cekala stole or converted any trade secrets.